FOURNET, Justice.
 

 The defendants, Gladys Sharbino and Edith Moreau Phipps, were convicted of and sentenced for the crime of manslaughter on an indictment charging them jointly with the murder of Frank Sharbino, husband of Gladys and uncle of the other defendant, and they have appealed.
 

 We were not favored with an oral argument or a brief in behalf of the defendants. A review of the record, however, reveals that the defendant Edith Moreau Phipps, on the morning of May 25, 1939, purchased one-eighth of an once of strychnine for the purpose, as written on the poison register kept by the druggist and pharmacist, M. E. Bozeman, of destroying salamanders. Late in the afternoon of the same day, the strychnine was administered by defendant Gladys Sharbino to deceased in capsules, on the pretext that it was medicine prescribed for him by Dr. N. M. Brian. The deceased died shortly after having taken the capsules and an autopsy was performed to ascertain the cause of his death. Immediately after the funeral the defendants were arrested for his murder and were formally charged therefor on the 22nd of September, 1939, arraigned on September 30, and their trial began on the 16th of the month following. During the trial ten bills of exception were reserved to the rulings of the trial judge.
 

 The first bill was reserved in connection with the following part of the district attorney’s opening statement, to which counsel for defendants objected:
 

 “ * * * she [defendant Edith Moreau Phipps] was asked whether she had bought any poison and she denied that she had bought any poison at any time for any purpose; then, having in mind that the poison book had been signed, Edith Phipps was required to write her name on several pieces of paper and she was' then advised that Edith Phipps’ name appeared on the poison register and then in the face of
 
 *716
 
 that she still maintained she had not signed the book or bought any poison, and it was not until she was informed that the party making the sale had said that he could identify the party who signed the book and and bought the poison, then it was that she changed her former statement and admitted that she did buy some poison and did sign the register, but she claimed that she had bought it for the purpose of killing a bitch police dog, and nothing whatever was brought out at that time about any salamanders, and we expect to show that Frank did not have a crop and could not have been bothered with salamanders, and that there were no hills showing that Frank was bothered with salamanders * * *(Brackets ours.)
 

 Counsel in making the objection did not assign any reason or grounds in support thereof, nor is it set forth in the bill of exception prepared by him as a reason or ground for the objection that the statements or admissions of the accused Edith Moreau Phipps, as outlined by the district attorney in his opening statement, were not admissible in evidence. The only complaint incorporated in the bill is “ * * * * that said statement was prejudicial to the defendant in that the testimony of the druggist from whom the poison was bought was emphatically that the defendant said to him that the poison was wanted for the purpose of killing Salamanders; that the statement made by the District Attorney was evidence and was calculated to and did prejudice the defendant.”
 

 It is the mandatory duty of the district attorney in all cases triable by jury to make an opening statement to the jury explaining the nature of the charge against the accused and “the evidence by which he expects to establish the same.” Article 333, Code of Criminal Procedure. See, also, State v. Ricks, 170 La. 507, 128 So. 293; State v. Nahoum, 172 La. 83, 133 So. 370; State v. Ducre, 173 La. 438, 137 So. 745; State v. Silsby, 176 La. 727, 146 So. 684; State v. Elmore, 177 La. 877, 149 So. 507; State v. Garrity, 178 La. 541, 152 So. 77; State v. Bishop, 179 La. 378, 154 So. 30. This court, in the case of State v. Ricks, supra, quoted with approval the following statement from the case of People v. Van Zile, 73 Hun. 534, 26 N.Y.S. 390, 393, “ * * * What is said in an opening has no binding force, and it is designed only to give a general acquaintance with the case, to enable the jury to understand and appreciate the testimony as it falls from the lips of the witnesses.” [170 La. 507, 128 So. 294.]
 

 The acts and admissions of the defendant Edith Moreau Phipps at the time she was charged with the crime were admissible as evidence against her in order to show guilty knowledge. State v. Picton, 51 La.Ann. 624, 25 So. 375. See, also, State v. Williams, 120 La. 175, 45 So. 94.
 

 Bill of Exception No. 1 is therefore without merit.
 

 The next bill of exception was also reserved in connection with the district attorney’s opening statement. The following is the portion objected to:
 

 “Now Gentlemen, at the time that Editli was being questioned in the Sheriff’s of
 
 *718
 
 fice, before she was willing to talk any further, she expressed a desire that she go and see and talk things over with Gladys. First we will show that she was advised that night that we were going to keep the parties separate for the time being and that she could not see Gladys that night, and we will show that she seemed very anxious to see Gladys and talk things over with her and she replied that it might be the last night she would get to see her and said that she might get the electric chair. I don’t know what they have in Pennsylvania, but she used the words ‘electric chair’ as explanation as to why she wanted to see Gladys once more.”
 

 At the time of the objection to the above, counsel for defendants gave no reason therefor, but in the bill as prepared, it is stated that the statement was prejudicial to the defendant Gladys Sharbino and that the presiding judge refused to advise the jury to disregard the statement.
 

 This bill is without merit for the reasons given under Bill of Exception No. 1, and for the further reason that a mere reading of the statement shows that the declaration was made by the defendant Edith Moreau Phipps out of the presence of the other defendant and the record shows that when the statement was offered in evidence the trial judge instructed the jury that the same was admitted in evidence only as to the party making the same and was not only not binding on her co-defendant, Gladys Sharbino, but was not even to be weighed or considered by them against her.
 

 Bill of Exception No. 3 grew out of the following comment by the trial judge in ruling on the objection of the defendants’ counsel to a question asked Bozeman, the druggist who sold the poison to the defendant Edith Moreau Phipps on the day of the death of Frank Sharbino, by the prosecuting attorney, which statement defendants’ counsel contends was a comment on the facts by the judge:
 

 “Mr. Fuller (the District Attorney) stated in his opening statement that his evidence would be upon that line.”
 

 The record does not reveal to what question the objection was made when the trial judge’s ruling hereinabove complained of was given; nevertheless, we fail to see in what manner it was a comment on the facts. On the contrary, the remark made by the trial judge simply indicates that the ruling was to some objection raised by the defendants’ counsel to testimony then being offered which he claimed was not in line with the opening statement made by the district attorney.
 

 Defendants’ counsel objected to and reserved a bill of exception (No. 4) to certain testimony of the witness Allen Netherland wherein he related his conversation with the deceased after the poison had begun to take effect on the ground that “ * * * it was hear say and that a proper foundation had not been laid for its admission * * The testimony is as follows:
 

 “When I first walked in the room there, he was holding his legs and he says Gladys rub my leg and she said she wouldn’t and
 
 *720
 
 I spoke up and said I would, I said Frank I will rub your legs and I said, What is the matter Frank, did you get too hot and he said No, that Gladys and Edith went to town today and saw Doctor Brian and he had sent some tablets, and he had just finished when he had a fit and Gladys told me to go and get old Mr. Sharbino and Edmund and when I got over there Edmund’s wife wanted me to stay with the children and I didn’t go back.”
 

 The record reveals that this witness had been requested to come over by the defendant Gladys Sharbino and that when he entered the room where Frank Sharbino was, and during the time the conversation took place, both defendants were present. We think, therefore, that the testimony, being a definite statement of a matter of fact, and having been made in the presence and hearing of the defendants, was of such a nature as to call for a reply or correction, and that the defendants, having failed to make a reply or to correct the statements of the deceased, such statements are admissible as tending to show an acquiescence as to the truth of the statement. 4th Underhill, Criminal Evidence, Section 259; 2nd Wigmore, Evidence, Volume 2, Section 1071; 22 Corpus Juris 321, Section 356; 22 Corpus Juris 322, Section 357; Article 448, Code of Criminal Procedure; Mickewicz v. United States, 3 Cir., 4 F. 2d 48; Gentili v. United States, 9 Cir., 22 F.2d 67; People v. Cascia, 191 App. Div. 376, 181 N.Y.S. 855; Attorney General v. Pelletier, 240 Mass. 264, 134 N.E. 407; State v. Smith, 30 La.Ann. 457; State v. Diskin, 34 La.Ann. 919, 44 Am. Rep. 448; State v. Johnson, 35 La.Ann. 842; Olivier v. Louisville & N. R. Co., 43 La.Ann. 804, 9 So. 431; State v. Carter, 106 La. 407, 30 So. 895; State v. Monfre, 122 La. 251, 47 So. 543; State v. Bell, 129 La. 550, 56 So. 504; City of Shreveport v. Marx, 148 La. 31, 86 So. 602.
 

 Bill of Exception No. 5 was reserved to certain testimony of the witness Henry Quaid which was admitted over the objection of the defendant and related to a conversation that took place between the deceased, Frank Sharbino, and the defendant Gladys Sharbino. The trial judge overruled the objection for the following reasons:
 

 “This witness first stated the condition of Frank Sharbino when he came to him just a short while before Frank died. In substance witness Stated Frank was having fits and that he held him at Frank’s request because it seemed to ease him quicker.
 

 “Witness was permitted to relate a conversation which took place between Gladys and the father of Frank Sharbino, James Sharbino, about having given Frank some medicine that afternoon. This conversation was testified to by James Sharbino before Henry Quaid was called as a witness and Gladys also gave her version of the conversation when she testified in. her own behalf.
 

 “This evidence was relevant as admissions on the part of - Gladys Sharbino at a time when she was not under arrest nor accused of the crime.”
 

 
 *722
 
 We find no error in this ruling of the trial judge.
 

 Bill of Exception No. 6 was reserved to the ruling of the trial judge in sustaining the prosecuting attorney’s objection to a witness, Jeff Thompson, answering the following question propounded by the counsel for defendants: “Mr. Thompson can you tell me when they changed from coffee to capsules?”
 

 The trial judge sustained the objection for the reason that since no evidence had been introduced to show that Frank Sharbino had either taken or been given the poison in coffee, the question, as put, assumed a statement of fact not shown to exist by the evidence and should not, therefore, be admitted in the form in which it was put. Defendant’s counsel, however, made no attempt at that time or later to reframe the question or inquire into the subject matter. We fail to see in what manner the defendants could have been prejudiced by this ruling, and this bill of exception, therefore, is without merit.
 

 Bill of Exception No. 7 grew out of a statement made by the trial judge in his ruling to an objection urged by counsel for defendants to a certain question propounded by the district attorney to one of the state’s witnesses, Seadon Johnson, which statement, he contends, was a comment on the facts in the presence of the jury. The statement made is as follows: “I understand that didn’t happen that night.”
 

 The trial judge, in his per curiam, described the circumstances under which the ruling was made and his reasons therefor and, we think, properly disposed of the objection, as follows:
 

 “Witness Johnson testified about a conversation with accused, Edith Phipps, in the presence of the District Attorney, the Sheriff and the witness in the Sheriff’s office at Colfax on the night of the day the Post Mortem was held over the body of Frank Sharbino and the same day said Sharbino was buried.
 

 “Counsel for defendants was then given a chance to cross examine witness and he soon began asking about certain statements Edith made to him in the jail and in the presence of certain members of the family of accused to which the District Attorney objected for the reason that it was about a different conversation from that inquired about by him and statements after defendants were charged with the crime would be self s'erving declarations.
 

 “Before ruling on the objection urged Judge stated to counsel for defendants T understand that didn’t happen that night’ meaning the conversation he was inquiring about happened at a different time and place and didn’t happen the night of the conversation had with Edith in the Sheriff’s office. The conversation defendant’s counsel was inquiring about did not happen in the Sheriff’s Office but in the jail and at a later time and in the presence of different witnesses except Johnson.
 

 “We were only trying to be sure that the inquiry was about two different conversations made at different times and places before ruling on the objection and
 
 *724
 
 the statement was made to counsel for defendants with the exception that if we were in error he would correct us before we ruled on the objection. It was in no way made as a comment on the facts. We did not know what statements the defendant had made in the second conversation until it was later inquired about as shown by note of evidence. No note of evidence was made of the first conversation. * * * ”
 

 Bill of Exception No. 8 was reserved to the ruling of the trial judge in sustaining the objection of the district attorney to the following question asked the sheriff by the counsel for the defendant: “On the occasion that you said Edith made a statement to you and Mr. Fuller in the jail, didn’t she say she had purchased the strychnine and gave it to Frank Sharbino the deceased, telling him at the time to place it where the children could not get it and that subsequently Frank Sharbino took some of it in a cup of coffee.”
 

 The reason for the state’s objection to and the trial judge’s ruling on the question was that the statement had been made on an occasion other than the occasion being testified to by the witness who was questioned, and, further, that inasmuch as it was made after Edith Moreau Phipps was arrested and incarcerated, it was self-serving. We find no error in the ruling of the' trial judge.
 

 Bill of Exception No. 9 was reserved under the following circumstances: The state’s witness Seadon Johnson, deputy sheriff, having referred on cross-examination' to a. conversation he overheard that took place between defendant Edith Moreau Phipps, her grandmother, and aunt, counsel for the state, on re-direct examination, asked the witness to relate the whole statement made by the defendant Edith Moreau Phipps on that occasion, giving same in detail as he remembered it. Counsel for defendants, on behalf of the defendant Gladys Sharbino, objected to this testimony on the ground that she (Gladys Sharbino) was not present; that it would tend to incriminate her; and that, when answered, it did, in fact, do her irreparable injury. The witness’s testimony was, in substance, that defendant Edith Moreau Phipps’ grandmother told her, among other, things, they wanted to find out from her about the poison; that Gladys Sharbino had “said she didn’t know anything about it;” that they wanted the truth; and that the defendant Edith Moreau Phipps’ reply was, “* * * if Gladys said she didn’t know anything about it she was a d— liar, she does know.”
 

 The trial judge’s explanation in his per curiam properly disposed of this bill, and we therefore quote therefrom as follows:
 

 “Seaton Johnson was called as a witness by the state and inquired about statements made by Edith Phipps in the office of the Sheriff of Grant Parish on the night she was first arrested in the presence of the District Attorney, Sheriff of Grant Parish and Deputy Sheriff, Seaton Johnson, witness on the stand.
 

 “Witness was then tendered to defendant for cross examination and defendant’s counsel, Mr. Thomas, asked witness about statements made by Edith Phipps in jail in the presence of witness, Johnson, and
 
 *726
 
 Edith’s Grandmother and the Grandmother’s daughter, who had requested to see Edith in jail. The District Attorney first objected to the statements of Edith made in jail but immediately withdrew any objection and the statements inquired about by defendant went to the jury. After the counsel for defendants finished the cros.s examination of witness he was tendered the District Attorney for re-direct examination.
 

 “The State examined witness about the statements made in jail - by Edith in the presence of witness which had been brought out by counsel for defendants and the first questions asked by the 'state on re-direct examination indicate that Mr. Johnson had already stated on cross examination that Edith was visited by Gladys’ Grandmother and Aunt.
 

 “In addition to having the right 'to let the jury hear the whole of the statement rather than only that part desired by counsel for defendants the part objected was clearly admissible against Edith, though reference was made to Gladys, who was not present, for the purpose of showing the guilt of Edith and her knowledge of the purchase and use of the Strychnine. Also to rebut that part of her statement or conversation wherein Edith claimed that Frank was told to put the strychnine or poison where the children could not get it.
 

 “Before the statement was admitted the judge instructed the jury that any statement made by Edith out of the presence of Gladys was not binding on Gladys and could only be accepted and considered as evidence against Edith who made the statement. The statement ‘If Gladys said she did not know anything about the poison she was a dam liar, she does know’ certainly did disclose guilty knowledge of Edith as to the purchase and use of the poison and was clearly relevant against Edith to establish guilty knowledge and to rebut the statement that she had told Frank to put the poison where the children could not get it.”
 

 Bill of Exception No. 10 was reserved to the trial judge’s overruling of defendants’ counsel’s motion for a new trial. The explanation of the trial judge for his ruling is given in his per curiam to this bill, which per curiam fully sets out the points raised in the motion and, in our opinion, properly disposes of this bill. This per curiam is as follows:
 

 “In addition to the general charge that the verdict of the jury was contrary to the law and the evidence the motion for new trial filed by defendants charges that at the noon recess on October 17, 1939, one juror separated from the other eleven jurors, after they had been selected and sworn to try the case and the greater part of the evidence had been heard by the jury. Evidence was taken on the trial of the motion to show just what happened and is made a part of the record.
 

 “There was no actual separation of the jury during the trial. The separation complained of by defendants was only a momentary and accidental separation and there was no opportunity for- an outsider to communicate with said juror.
 

 
 *728
 
 “The jury box is in the southeast corner of the court room near the Judge’s stand. There is a door leading from the jury box into the jury room which is the extreme southeast corner of the court building. There is no door leading from the jury room to the outside. The only exit from the jury room is through the door to the jury box and then through the court room outside. There is a door leading from the jury room into a small room just back of the Judge’s stand. The exit from this small room is through a door just behind the Judge’s chair. In this room all the ballot boxes for holding elections are kept and the Clerk of Court has the only key that will unlock this door and keeps it in his possession all the time and the door is kept locked except as the Clerk of Court may need to enter the room.
 

 “The Court had given the jury repeated instructions not to separate during each recess of the court during the trial. When the Court reconvened after noon recess on this day, the Sheriff, who was in personal chatge of the jury and in the jury room with them at the time, was instructed to bring the jury into Court. He opened the door leading from the jury room to the jury box and eleven of the jurors came into the jury box and took their seats and the Sheriff stepped just inside the door and closed it just for a moment and was standing there when it was discovered there were only- eleven jurors seated. The Court inquired about the other juror and the Sheriff opened the door and stated that he was not quite ready to come in for the reason he was in the rest room which is situated in the southwest corner of the jury room next to the wall separating the jury box from the jury room.
 

 “The jurors which had taken their seats-in the jury box were then instructed to-return to the Jury room and wait until, the other juror was ready to come in with them which they did. This all happened' within a brief time of about a minute andl the door between the jury room and the jury box was not closed for that period of time because the Sheriff who still stood! standing at the door immediately opened the door when the question as to the whereabouts of the absent juror was raised.. There was no chance for the juror left in the room to communicate with any outsider during the brief period. The Sheriff" was standing in the door leading from the jury box into the jury room and the door behind the Judge’s chair leading into the-small room was locked and the key in the-possession of the Clerk of Court. No outsider could have gotten to the jury room, from either opening. The outside windows-to the jury room are about 22 feet from the ground and no outsider could have gotten to the juror in this manner during the-brief space of time within which it all happened. This was only a momentary and accidental separation with no opportunity for an outsider to communicate with the juror who was busy at the toilet during the time- and for a short time after the other eleven, jurors returned to the jury . I _ for said juror.
 

 “Defendants have offered no proof on-the trial of the motion to show that any-juror had been approached by any brother
 
 *730
 
 -of deceased or that any juror was prejudiced against defendants.
 

 “Counsel for defendants presented 310 Bill of Exception to the argument of the District Attorney as to Edith Phipps not having taken the stand in her own behalf although objection was made and a bill was reserved at the time. The District Attorney was permitted to discuss the fact that Edith Phipps did not take the stand in his closing argument because Counsel for defendants explained in his argument to the jury why Edith Phipps did not take the stand and told the jury what she knew about the case and what her evidence* would have been if she should have taken the stand. The District Attorney replied in his closing argument only to the argument made by counsel for defendants.
 

 “Defendants offered no evidence to establish that the death of Frank Sharbino was caused by his taking Strychnine in Coffee. The Court, therefore, did not refuse defendant to establish such fact. Had such evidence been offered the court would have permitted such evidence to have gone to the jury.
 

 “No Bill of Exception has been presented the court by counsel for defendants to the evidence of Dr. N. M. Brian. When Gladys Sharbino testified in her own behalf in response to questions propounded by her counsel she stated when Dr. Brian came to see Frank just before he died that Frank said: ‘Dr. give me something. I am going to die. Give me a shot and let me die easy.’ Before Dr. Brian could prepare to give the shot Frank died. Therefore, the statement of Dr. Brian was admissible as a dying declaration.
 

 “All other questions raised by defendants in their motion for a new trial are questions passed on by the court during - the trial as shown by Bills of Exceptions tendered by the Defendants, signed by the Court and filed herein.”
 

 For the reasons assigned, the conviction and sentence are affirmed.