628 So.2d 27 (1993)
STATE of Louisiana, Appellee,
v.
Demond CAREY, et al., Appellant.
No. 24859-KA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1993.
Opinion Modifying Judgment on Rehearing December 1, 1993.
*28 Randy E. Collins, Shreveport, for appellant Demond Carey.
N. Martin Trichel, Shreveport, for appellant Bobby Wallace.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., and H. Stanley Lockard and Catherine M. Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before NORRIS, VICTORY and WILLIAMS, JJ.
VICTORY, Judge.
Defendants, Demond Carey and Bobby Wallace, aka Bobby Young, Jr., were found guilty as charged by a jury of the second degree murder of Johnny Lee Atkins. Defendants appeal, urging among other complaints that the evidence was insufficient to sustain a conviction. We reverse the convictions, vacate the sentences and order the defendants discharged.

*29 FACTS

According to the prosecution's theory of the case, on November 20, 1990 at approximately 9:00 p.m., defendants Carey and Wallace, accompanied by Wallace's cousin, Tronde Young, were riding around in the Martin Luther King Drive area of Shreveport in a brown or green Ford four-door. While driving down Willis Street, Carey forced three pedestrians, one of whom was the victim, Johnny Lee Atkins, off the road. Carey turned the car around and drove back to where Atkins was standing. The young men exchanged words and Wallace pulled out a firearm. As Atkins began to run away, Wallace fired one shot into his back, causing his demise.
Carey and Wallace were indicted for second degree murder. One of the state's eyewitnesses to the crime could not be located by the state. Tronde Young testified at trial, but denied being in the car or having any personal knowledge of the crime. Following extensive impeachment of Young's testimony by his prior inconsistent statements, the jury convicted defendants of second degree murder.
On appeal, defendants claim that the state failed to produce sufficient evidence that they committed the crime, specifically arguing that the jury was encouraged to and used the substance of inconsistent statements as proof of guilt. We agree.

LAW
LSA-R.S. 14:30.1 defines second degree murder as the killing of a human being (1) when the offender has a specific intent to kill or to inflict great bodily harm, or (2) when the offender is engaged in the perpetration or attempted perpetration of ... armed robbery.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and does not extend to credibility determinations made by the trier of fact. LSA-La. Const., Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable possibility of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Long, 408 So.2d 1221 (La.1982). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for the requisite factual conclusion. State v. Chism, 591 So.2d 383 (La.App. 2d Cir.1991), citing State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir.1990); State v. Garlepied, 454 So.2d 1147 (La.App. 4th Cir.1984), writ denied, 462 So.2d 189 (1984).
Evidence of a prior inconsistent statement, even if admissible because the probative value of the evidence on the issue of credibility substantially outweighs the risks of undue consumption of time, confusion of the issues or unfair prejudice, may only be admitted when offered solely to attack the credibility of the witness and does not constitute substantive evidence of guilt. L.C.E. Art. 607D(2); State v. Allien, 366 So.2d 1308 (La.1978); State v. Williams, 258 La. 251, 246 So.2d 4 (La.1971); State v. Taylor, 593 So.2d 431 (La.App. 2d Cir.1992).

*30 DISCUSSION

Mark Lewis testified that he and Terry Gilliam were standing on Willis street on November 20, 1990, talking with the victim, Atkins, when a car forced them off the road, turned around and returned. Lewis stated that "the guys came up and asked for some bud [marijuana] ... and then all of a sudden a gun came out ...". Lewis claimed he heard one shot, as the three pedestrians ran. He described the car as a brown or green Ford four-door, with two men in the front seat and one in the back with a pistol.
Following the homicide, Lewis was shown a photographic lineup by Detective Gary Robinson and tentatively[1] identified Wallace as "looking familiar", but was unable to identify Carey or Young. When asked at trial about the photo lineup presented by Detective Robinson, Lewis stated, "I told him it looked like the one that pulled the gun out and I wasn't sure then, but you know, I am not really still sure." Lewis told the jury "the young man in the white shirt" was the person who had the gun. However, Carey was the defendant in the white shirt at trial, not Wallace. It is apparent that Lewis was unsure of the identification, both when shown the lineup following the homicide and at trial.
D'Andre Wilson, the victim's uncle, testified he saw the victim, Atkins, in possession of about $250 and purchasing beer and cigarettes at a Fina station at about 8:00 p.m. on the night of the homicide. Wilson testified he saw the defendants and Young at approximately 8:15 p.m. to 8:30 p.m. in front of Green Oaks High School in a green, four-door Ford LTD. He stated Carey was driving, with Wallace in the front passenger seat, and Young in the back seat.
Morris Reliford, the nephew of the victim and cousin of D'Andre Wilson, testified that he had also seen defendants and Young at 7:30 p.m. to 7:40 p.m. on the night of the homicide. According to Reliford, Carey was driving, Wallace was in the front passenger seat with a pistol, and Young was in the back seat.
Much of the remaining evidence presented by the state consisted of Young's prior inconsistent statements. During the investigation, Young told police that he was riding in the car with defendants on the night in question. However, at trial he stated he did not remember where he was on the day in question, nor who he was with. He denied being in a Ford automobile on Willis Street at about 9:00 p.m. and did not recall speaking with Eric Clinton at about 9:30 that night. He further denied telling Clinton that "something happened" on Willis Street that night, that the news reports incorrectly reported that four shots were fired, and that Wallace had fired the shot that killed the victim.
Detective Robinson was allowed to testify over defense objection about Young's prior statements to him about the homicide. At the defendants' request, the court instructed the jury that Young's prior inconsistent statements were admissible only to discredit his testimony, not to show the contradictory statements are true. During the initial interview with Robinson the day after the homicide, Young stated that Carey was driving, Young was the front passenger, Eric Clinton was in the back, and that Clinton fired the shot. Following further investigation, Detective Robinson found three witnesses who said Clinton was at a ballgame at the time of the shooting. During a second interview on November 29, 1990, Young told Robinson that his cousin Wallace was the passenger riding in the back seat. During this interview, Young stated that Wallace leaned out of the passenger window, yelled something like "you better run," and then fired a shot.
Eric Clinton's testimony was also used at trial to impeach Young's denials at trial. Clinton testified that, at about 9:30 p.m. on the night of the homicide, he encountered the defendants and Young by the washateria and Young told him that he, Carey and Wallace had been riding down Willis Street when "something happened." Defense counsel objected to Clinton's testimony as hearsay within hearsay since Young had denied being *31 present at the scene of the crime.[2] The state also used Clinton's prior statements to police in an attempt to impeach some of his trial testimony.
Following an objection to the court's admission of Clinton's testimony, the jury was instructed, in accordance with State v. Taylor, 593 So.2d 431 (La.App. 2d Cir.1992), "that a prior inconsistent statement is not substantive proof of guilt. You are the ones to make factual determinations about evidence that you hear.... Prior contradictory statements are admitted only to attempt to discredit the witness, not to show that the contradictory statements are true."
Clinton also admitted that a week after the homicide he informed the police that Young told him that Wallace told Young, "I didn't fire four times, I just fired once"; that Carey said they did it, "for the money and the weed"; and, that Carey said Wallace hung out the window and fired the shot." Since this hearsay testimony was admissible only to attack Young's credibility, the trial court again gave the cautionary instruction that the prior statements were not admitted to show the truth thereof, but only to discredit the witness.
However, in closing argument over defense objections, the prosecutor repeatedly argued the substance of Young's and Clinton's prior inconsistent statements as proof of the defendants' guilt. For example, the prosecutor argued that in every one of these statements Carey was the driver, and that in most of the statements Wallace was implicated as the shooter. The prosecutor encouraged the jury to believe Young's second statement given to police as told by Detective Robinson. At one point in the closing argument, the state argued:
Hearsay is a statement other than one made by the declarantother than one made by Tronde in this instance, being made by Detective Robinsonwhile testifying at the present trial or hearing offered in evidence to prove the truth of the matter asserted. You see, hearsay, you don't allow hearsay because you are offering it to prove the truth of the matter asserted and they were objecting to hearsay. State of Louisiana never did say that we absolutely believed the first statement of Tronde Young, never did say we absolutely believed the second statement of Tronde Young. Never did. We said to you, look to the substance of it. We've got these inconsistent statements in this evidence for you to judge the substance along with the other evidence to prove who killed Johnny Lee Atkins. Remember that. He did say in both those statements, I witnessed the killing because I was in the car. Tronde said that. Do you think he would have said that if it weren't true? [Emphasis added.]
A jury is allowed by law to consider prior inconsistent statements as evidence that a witness is not telling the truth at trial. However, it may not accept the substance of the prior statements as the truth and use it to convict a defendant. State v. Taylor, supra.

CONCLUSION
Viewing the testimony in a light most favorable to the state, but not considering the substance of any prior inconsistent statements given by Young or Clinton, the state clearly failed to prove beyond a reasonable doubt that the defendants murdered Atkins. Mark Lewis, the only eyewitness to the crime who testified at trial and admitted being at the scene, repeatedly acknowledged that he was not sure of his identification of one of the participants. Indeed, as conceded by the state in closing arguments, Lewis identified Carey at trial as the person he had tentatively identified in a photo lineup as having the gun, when in fact, it was Wallace he had tentatively identified in the photo lineup. His testimony at trial leaves no doubt that he was unsure of the identification in the courtroom and in the photo lineup. The testimony of Wilson and Reliford put the defendants and Tronde Young together in a green car, perhaps a Ford LTD, within 15 minutes to an hour before the crime. Although Reliford and Lewis saw a pistol, it *32 was never matched to the bullet that killed the victim. This evidence suggests the defendants may have committed the crime, but falls substantially short of proof beyond a reasonable doubt.
Although the trial court charged the jury that contradictory statements "are admitted only to attempt to discredit the witness, not to show that the contradictory statements are true," it is clear that in convicting the defendants, the jury erroneously accepted the substance of some of the prior inconsistent statements as the truth. Because the substance of the prior inconsistent statements cannot be used to convict the defendants and the state otherwise failed to carry its burden of proving them guilty beyond a reasonable doubt, the defendants' convictions are based on insufficient evidence. See Jackson v. Virginia, supra. Under these circumstances, we are required by law to reverse the convictions, vacate the sentences imposed and discharge the defendants on these charges.

DECREE
Based on the foregoing, defendants' convictions are reversed, the sentences are vacated and the defendants are discharged.
CONVICTIONS REVERSED, SENTENCES VACATED, DEFENDANTS DISCHARGED.
Before MARVIN, NORRIS, HIGHTOWER, VICTORY and WILLIAMS, JJ.

ON REHEARING
VICTORY, Judge.
In its application for rehearing in this case, the State argues for the first time that Tronde Young's statements to Eric Clinton, in the presence of defendants Carey and Wallace, together with their failure to respond, were an adoptive admission under State v. McClain, 254 La. 56, 222 So.2d 855 (1969), cert. den. 399 U.S. 911, 90 S.Ct. 2205, 26 L.Ed.2d 566 (1970). See Louisiana Code of Evidence Article 801(D)(2)(b). The State argues, that when these circumstances are viewed as an admission, along with the other evidence presented, the Jackson v. Virginia standard has been met.
In State v. McClain, the Louisiana Supreme Court stated:
If a statement incriminating a defendant, is made by another in the defendant's presence and hearing, under circumstances where a denial, explanation, or reply would be expected and where the defendant is not in legal custody and is at full liberty to speak, evidence of that statement, and of the defendant's silence and failure to deny or explain it, may be submitted to the jury for consideration as an admission by the defendant of that statement. State v. Sharbino, 194 La. 709, 194 So. 756, and authorities cited; 22A C.J.S. Criminal Laws 734(1); see State v. Hayden, 243 La. 793, 147 So.2d 392. The evidence here of the circumstances surrounding McBroom's statement and the defendant's silence satisfies the requisites for admissibility of the statement and of the defendant's silence as an admission.... Neither the witness to a verbalized admission nor the witness to an admission through silence is obliged to vouch for the truth of the content of the admission. Hinton's testimony is admitted not as truth of what McBroom said, but only to show the defendant's acquiescence in that statement through failure to deny or explain. Hence to admit this testimony is not a denial of the defendant's right of confrontation and cross examination.
The statements in question were offered by the State only to impeach Tronde Young, who denied at trial that he had had a discussion with Clinton shortly after the shooting. Thereafter, as a witness for the State, Eric Clinton testified (after admitting he had first told the police that the incriminating statements were made to him by the defendants) Tronde Young told him at about 9:30 p.m. on the night of the shooting in the presence of the defendants that he, Carey and Wallace were riding down Willis Street, had just done something, that one shot, not four, was fired, that Wallace had leaned out the car window and said to the victim Atkins, "Where's the money, give me the money," and that Carey and Wallace had done it for the money and the weed. Undoubtedly, the defendants were close enough to Tronde Young to have heard these statements.
*33 Viewing this evidence and the other circumstantial evidence in a light most favorable to the State, we now reverse our earlier ruling and conclude that the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendants were guilty.
Nonetheless, as pointed out in our original opinion, in its closing argument, the State repeatedly encouraged the jury to accept the substance of prior inconsistent statements as proof of the defendants' guilt. Although the defendants objected to these remarks, the trial judge did not stop the State from such arguments, but simply read the jury instruction on prior inconsistent statements. We are thoroughly convinced that the State's improper closing arguments influenced the jury and contributed to the verdict in this case, depriving the defendants of a fair trial. See State v. Sharp, 418 So.2d 1344 (La.1982).
For these reasons, our original judgment in this case is modified. The defendants' convictions are reversed, the sentences vacated, and the case is remanded for a new trial.
CONVICTIONS REVERSED, SENTENCES VACATED, REMANDED FOR A NEW TRIAL.
NOTES
[1] Detective Robinson described a "tentative ID" as one in which the witness will not commit to being positive.
[2] Since this reversal rests upon the improper use of prior inconsistent statements as substantive evidence of guilt, we pretermit a discussion of the hearsay implications of Clinton's statements.