254 So.2d 262

STATE of Louisiana

v.

F. O. DIDIER, Jr.

No. 51561.

Nov. 8, 1971.

Jeannette Theriot Knoll, Edwin L. Lafargue, Marksville, Joe J. Tritico, Lake Charles, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Charles A. Riddle, Jr., Dist. Atty., John A. Boatner, Jr., Asst. Dist. Atty., for plaintiff-appellee.

DIXON, Justice.

F. O. Didier, Jr., Sheriff of Avoyelles Parish, was convicted of malfeasance in office and sentenced on January 19, 1971, to pay a fine of $500.00 and to serve three months in jail. Thirteen Bills of Exceptions were reserved by the defendant. Eight were briefed. They will be discussed in the order in which they were briefed.

Bill of Exceptions No. 8 was reserved to the overruling of defendant's motion to quash the bill of information. The body of the bill as amended is reproduced as follows:

"THAT F. O. DIDIER, JR. late of the Parish aforesaid on and/or between April 1, 1970 and July 6, 1970 with force and arms, in the Parish, District and State aforesaid, and within the jurisdiction of the Twelfth Judicial District Court, did wilfully, maliciously and feloniously, commit the crime of Malfeasance in Office as defined by La.R.S. 14:134 in that on and/or between the above stated dates, he, the said F. O. Didier, Jr., being then and there Sheriff of Avoyelles Parish, Louisiana, a public officer, did intentionally, unlawfully and knowingly refuse and fail to perform a duty and/or duties lawfully required of him as such officer, in that he, the said Sheriff of Avoyelles Parish, F. O. Didier, Jr., after having knowledge that certain crimes hereinafter mentioned were in the process of being committed and/or had occurred in the Parish of Avoyelles, and within the jurisdiction of this Court, namely, the crime and/or crimes of,

"(1) Clyde M. Hyde, Jr., Richard Dupont, alias Joe Johnson, Charlie Hay and Don Herbert Rhodes in having on or about May 9, 1970 violated Article No. 65 of the Louisiana Criminal Code entitled, "Simple Robbery" in that they did rob one Louis Golden of Nineteen Thousand Eight Hundred and No/100 ($19,800.00) Dollars in United States Currency;

"(2) Clyde M. Hyde, Jr., Richard Dupont, Alias Joe Johnson, Charlie Hay and Don Herbert Rhodes in having on or about May 9, 1970 violated Article No. 67 of the Louisiana Criminal Code entitled 'Theft' in that they did commit a theft of Nineteen Thousand Eight Hundred and No/100 ($19,800.00) Dollars in United States Currency, the property of Baton Rouge Scrap Metal, Inc.;

"(3) Clyde M. Hyde, Jr., and Richard Dupont, alias Joe Johnson, in having on or about June 19, 1970 attempted to commit theft of the sum of Twenty Thousand and No/100 ($20,000.00) Dollars in United States Currency the property of T. L. Myers and Leonard Myers, a partnership doing business as George W. Myers and Son;

"(4) Clyde M. Hyde, Jr., and Richard Dupont, alias Joe Johnson, on or about June 26, 1970 attempted to commit theft of the sum of Twenty Thousand and No/100 ($20,000.00) Dollars in United States Currency, the property of one Vernon A. Capers; and

"(5) Clyde M. Hyde, Jr., and Richard Dupont, alias Joe Johnson, on or about July 3, 1970 attempted to commit theft of the sum of Twenty Thousand and No/100 ($20,000.00) Dollars in United

States Currency, the property of Monroe Scrap Material, Inc.

"And after having knowledge that the crimes above stated were in the process of being committed and/or had occurred, he, the said Sheriff F. O. Didier, Jr., did intentionally and unlawfully and knowingly fail and/or refuse to apprehend, or attempt to apprehend those persons involved in the commission of said crimes hereinabove mentioned, and he, the said F. O. Didier, Jr., Sheriff, after having and/or receiving knowledge that the crimes above stated were in the process of being committed did intentionally and unlawfully and knowingly fail and refuse to halt, or attempt to halt, the commission of said crimes; that he, the said Sheriff F. O. Didier, Jr., did intentionally and unlawfully and knowingly refuse and fail to submit, offer and tender a report of the said crimes hereinabove mentioned to the District Attorney for the Parish of Avoyelles, and did intentionally and unlawfully and knowingly refuse and fail to report according to law said crimes hereinabove mentioned to the District Attorney for the Parish of Avoyelles for his consideration and determination according to law; that he, the said Sheriff F. O. Didier, Jr., did intentionally and unlawfully and knowingly refuse and fail to arrest and properly and legally charge said persons committing said crimes hereinabove mentioned;

"And that by and/or all of such conduct, he, the said F. O. Didier, Jr., did intentionally and unlawfully fail and refuse to perform a duty and/or duties lawfully required of him as Sheriff of Avoyelles Parish, Louisiana.

"And that on and/or between the said dates of April 1, 1970 and July 6, 1970, the said F. O. Didier, Jr., as Sheriff of Avoyelles Parish, Louisiana, did intentionally, unlawfully and knowingly perform illegal and unlawful acts contrary to and in violation of his duty as Sheriff of Avoyelles Parish, Louisiana, in that he did conspire to commit with and did in fact, aid and abet Clyde M. Hyde, Jr., and Richard Dupont, alias Joe Johnson, in the commission of the following crimes, to-wit:

"(a) Attempt to commit theft of Twenty Thousand and No/100 ($20,000.00) Dollars in United States Currency, the property of T. L. Myers and Leonard Myers, a partnership doing business as George W. Myers and Son, referred to in No. 3 hereinabove;

"(b) Attempt to commit theft of Twenty Thousand and No/100 ($20,000.00) Dollars in United States Currency, the property of one Vernon A. Capers, referred to in No. 4 hereinabove;

"(c) Attempt to commit theft of Twenty Thousand and No/100 ($20,000.00) Dollars in United States Currency, the property of Monroe Scrap Material, Inc.

"And that by any and/or all of such conduct, he, the said F. O. Didier, Jr., did intentionally and did unlawfully perform the said aforementioned illegal and unlawful acts, contrary to and in violation of his duty as Sheriff of Avoyelles Parish, Louisiana."

The defendant seems to argue that the bill of information does not "adequately or properly perform" the function of informing the judge of the scope and nature of the alleged offense so he might properly control the trial and form a record that would bar subsequent prosecution for the same offense.

An examination of the bill disposes of the argument.

 Defendant further argues that the bill is duplicitous, and violates article 491 of the Code of Criminal Procedure.

Article 491 of the Code of Criminal Procedure defines duplicity as "the inclusion of two offenses in the same count, except as otherwise provided in this Title." Article 492 disposes of defendant's argument. It states:

"A count in an indictment is not duplicitous because, in stating the elements of the offense charged or describing how it was committed, it alleges criminal acts which would separately constitute another offense or other offenses."

In the bill before us, in which the defendant is accused of malfeasance in office (R.

S. 14:134), the sheriff is charged with failing to perform his duty in various ways. First, he is charged with having knowledge of the commission of certain crimes by persons named in the bill in his parish, both during and after the commission. He is charged with the failure and refusal to apprehend the persons involved in the commission of the specified crimes, with failing to attempt to halt the commission of the crimes, with failing to report the crimes to the district attorney and with failing to arrest and charge the perpetrators of the crimes. The defendant is further charged in the bill with conspiracy and aiding and abetting certain persons in the commission of three attempted thefts, detailed in the bill.

The defendant is accused of only one crime. The way he is accused of having committed the crime of malfeasance in office is detailed in the bill. Malfeasance in office is described as follows:

"Malfeasance in office is committed when any public officer or public employee shall:

"(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or

"(2) Intentionally perform any such duty in an unlawful manner; or

"(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to

perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.

"Whoever commits the crime of malfeasance in office shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both." (R.S. 14:134).

Defendant argues that the bill charges two distinct kinds of offenses. The first portion of the bill, without question, describes the failure of the sheriff to act when he had knowledge of the perpetration of certain offenses. The defendant argues that the last portion of the bill charges the sheriff with a different kind of crime, conspiracy, and, in addition "did in fact aid and abet" the perpetrators in the commission of three attempted thefts. The attempted thefts involved the same sums, the property of the same persons, the same dates and the same perpetrators as those occurrences described in the first part of the bill. The last paragraph of the bill of information charges that the conspiracy or the "aiding and abetting" were illegal and unlawful acts performed by the sheriff in violation of his duty as sheriff. This is merely descriptive of another way in which the sheriff was accused of violating R.S. 14:134, and does not charge the sheriff with the crimes of conspiracy or theft. The inclusion of such charge is not duplicitous, and it is specifically permitted by Code of Criminal Procedure article 492 to allege criminal acts which would constitute other offenses in stating the elements of the offense charged.

In State v. Melerine, 236 La. 929, 109 So. 2d 471 (1959), the defendant was charged with malfeasance. He complained that the bill also charged him with public bribery. This court rejected the defendant's attack upon the bill.

■ Defendant seems to argue further that in a bill charging him with a misdemeanor, he is also accused of the perpetration of felonies, triable by jury. Such contention was specifically rejected by this court in State v. Melerine, supra.

There is no merit to the motion to quash.

■ Defendant's second argument concerns the overruling of Bill of Exceptions No. 9, taken to the failure of the prosecution to follow the "normal order of trial" in Code of Criminal Procedure article 765. After a witness was sworn, defendant objected because the prosecution had not made an opening statement. The per curiam of the trial judge is as follows:

"This bill correctly states the facts. However, the Court did announce just before the first witness was called and sworn, that it had read the bill of information; that it was aware of defendant's plea on arraignment and that it was ready for the evidence if both sides were ready. The case had been before the court on many preliminaries; it was

fully aware of the respective contentions and the issues.

"The Article cited (Art. 765) gives the normal order of trial. The first * * * 'the selection and swearing of the jury.' It would seem that this Article refers to jury trials. There is a reason for these various steps; the jury does not know the contents of the bill; it does not know what defendant's plea was; the evidence should be outlined by the district attorney in his opening statement so the jurors can follow the witnesses and intended evidence. But the Court cannot see the basic reasons for these steps in a judge tried case. Why should same be given to the judge when he says he has already read same and is aware of the issues? If the provisions of this Article are sacramental, the question must be asked, 'How could there be a "selection and trial of the jury" in a judge tried case.' "?

The defendant ignores article 761 of the Code of Criminal Procedure:

"A jury trial commences when the first prospective juror is called for examination. A trial by a judge alone commences when the first witness is sworn."

There is nothing in article 765 indicating that the steps in the normal order of trial are sacramental. All the steps in article 765 refer to jury trials; there is one reference to the announcement of the judgment in non-jury cases. There is, however, nothing contained in the article to indicate that an opening statement, nor a reading of the indictment, nor a reading of the defendant's plea is essential in a non-jury case. The reasons expressed in the trial judge's per curiam adequately illustrate that such steps would have served no useful purpose in the case before us.

In 1934 this court held that article 333 (the predecessor article of Code of Criminal Procedure article 765) did not require an opening statement in a case tried to the judge alone. We said, in State v. Florane, 179 La. 453, 461, 154 So. 417, 419: "It is only in cases where the trial is before a jury that the district attorney is required to make an opening statement."

■ As a third argument, defendant complains that his Bill of Exceptions No. 13 should have been sustained to the overruling of a motion for a new trial. In his reasons for finding the defendant guilty, the trial judge found that the defendant failed in his duty to report the crimes of which he had knowledge. Defendant seems to argue that there is no law requiring a sheriff to report crimes to the district attorney. R.S. 15:575 requires the sheriff to report every crime within his knowledge to the district attorney within twenty-four hours. R.S. 33:1435, if a statute were needed, articulates the duty of the sheriff to apprehend public offenders. There is no merit in Bill of Exceptions No. 13.

Defendant's fourth argument, based on his Bills numbered 5 and 6, complains of rulings of the trial judge excluding evidence on a motion to recuse the district attorney.

With respect to Bill of Exceptions No. 5, the question ruled to be irrelevant was one propounded to the district attorney. He was asked if he knew the long criminal record of a person who was to be a witness for the State at the trial of the defendant. Defendant argues that if the district attorney had granted immunity to a person with a long criminal record, it would tend to show that the prosecution of the defendant was due to "something other than zeal to enforce the law."

Bill of Exceptions No. 6 was taken to the sustaining of an objection by the State to an *answer* to a question about the district attorney's summoning the Governor. This ruling only amounted to an announcement by the trial judge that he did not consider the testimony with reference to summoning the Governor relevant in the motion to recuse the district attorney.

The defendant has wholly failed to demonstrate that the questions and answers which formed the basis of these bills are relevant to determining the incapacity of the district attorney to conduct this prosecution. It was wholly within the province of the judge to determine the admissibility of the evidence, and its relevance to the issues. R.S. 15:275. The answer to one question was before the judge, but did not persuade him. The defendant was not cut off from any legitimate avenue of inquiry. He was not denied the introduction of any fact that was relevant to the material issue on the motion to recuse. The accused was not prejudiced by the rulings complained of; there is no merit in these bills.

Defendant's fifth argument, on the fourth Bill of Exceptions, complains that the trial judge overruled a motion to continue the preliminary hearing, the arraignment, and a hearing on the defendant's motion to recuse the district attorney.

The trial judge's per curiam follows:

"Defendant here asked the Court to continue indefinitely his arraignment and continue, also, indefinitely, the hearing on his motion to recuse the district attorney. These moves were preliminaries prior to the arraignment of the defendant and prior to hearing of the motion to recuse. Defendant simply objected to the fixing of a date for either or both matters.

"This, a preliminary matter, was no part of the trial; the Court could rule on this and set a time, at a future date, which it did, when those steps would be taken. Not only were these preliminaries, apart from steps in the trial, but were preliminaries in a misdemeanor case which was being considered. The defendant admittedly would not have to be present

but his attorney said, he wanted to be present. A future date and time was set by the Court to give him the opportunity he desired."

No abuse of discretion has been shown. There has been no demonstration of prejudice to the defendant. He was present in court during the trial of the motion to recuse; he was present at the arraignment, and, of course, was present at the trial. The defendant participated in the proceedings, and testified on the trial of the motion to recuse. There is no merit in Bill of Exceptions No. 4.

■ Nor is there merit to Bill of Exceptions No. 11. As his fifth argument, the defendant complains that the trial judge allowed one of the State's witnesses to invoke the constitutional bars against self-incrimination.[1]

The per curiam of the trial judge adequately explains the circumstances of his ruling:

"Clyde Hyde, a co-conspirator with the defendant in this case, was called as a witness for the State. He was asked quite a few questions about other crimes and conspiracies; about his associations with certain other named criminals. He invoked the 5th Amendment to the Federal Constitution, stating that his answers would tend to incriminate him. He was asked to name another victim or 'sucker' that he said he had been working on in a scheme to defraud this person. He invoked the 5th Amendment on the same ground. Certainly, his answer, if compelled, might have made another crime complete against the witness, Mr. Hyde, to-wit, the crime of attempted theft. The Court ruled he did not have to answer this particular question and the others which would tend to incriminate him.

"Defense argued and contended, that he, the witness, had opened the door; he had started to testify and all matters could be gone into. The Court asked the witness himself, if he was refusing to answer because it would incriminate him. He answered yes.

"The Court is firmly convinced that a witness can answer certain questions and

---

1. R.S. 15:276—"No witness can be forced to criminate himself, but the judge is not bound by the witness' statement that the answer would criminate him, when from the nature of the question asked and the circumstances of the case such statement can not be true."
La.Const. art. 1, § 11—"No person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, except as otherwise provided in this Constitution. No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel confession of crime; nor shall any confession be used against any person accused of crime unless freely and voluntarily made." See State ex rel. Doran v. Doran et al., 215 La. 151, 39 So.2d 894 (1949).

not plead the 5th Amendment. However, at any time such questions or answers might incriminate him in any other crime or crimes, he can stop answering. There is no such thing as opening the door to everything because he took the stand and elected to answer some questions."

Even if the trial judge were in error, there is certainly no ground for reversal in this bill. Defendant complains because the questioning was relevant to the witness' "trustworthiness and credibility." This witness, Clyde Hyde, was a confessed confidence man who admitted under oath the commission of numerous crimes. The identity of a particular victim of a confidence game could in no way assist the trial judge in determining the reliability of the testimony of Hyde. Even if it had been erroneous, it was harmless. Code of Criminal Procedure article 921.

Defendant's final argument is based on his Bill of Exceptions No. 12. During the trial the defendant moved that the State produce all statements made by Richard Dupont, "which would tend to establish or prove his innocence." Defendant argues that, if Dupont had made statements exculpating Didier, the defense should be allowed to view the statements. Defendant does not contend that the statements are sought for the purpose of impeaching the

witness, and merely pleads for a liberalized discovery rule in criminal proceedings. This argument should be directed to the legislature. There is no Louisiana authority to support defendant's position, and there is no merit in Bill of Exceptions No. 12.

Bills of Exceptions numbered 1, 2, 3, 7 and 10 have been neither briefed nor argued. We have examined each bill, and find no merit in any.

The conviction and sentence are affirmed.