257 So.2d 670

**STATE of Louisiana**

v.

**Thorn B. HIMEL and Cyril Geary.**

**No. 51360.**

Jan. 17, 1972.

Rehearing Denied Feb. 21, 1972.

Jack N. Rogers, Baton Rouge, for defendants-relators.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-respondent.

BARHAM, Justice.

This matter is before us on writ of certiorari granted upon application of the defendants. These defendants, Thorn B. Himel and Cyril Geary, were tried before a judge without a jury for the simple battery of Steven Brian, and upon conviction each was sentenced to pay a fine of $100.00 and to serve a jail term of six months. The jail sentences were suspended and the defendants placed on probation for one year.

Both of the defendants and the victim were students at Louisiana State University. Geary, one of the defendants, got into a fight after a football game with an out-of-town visitor, and was beaten up. Geary, Himel, and others then went to look for the visitor. Entering the room of

Steven Brian, they mistook him for their quarry, beat him about the head and body, and kicked him. When Brian's roommate awoke, the assailants left. Geary and Himel, who later realized that they had attacked the wrong man, went to Brian, admitted the beating, and apologized. They were questioned by a university security officer, to whom they made inculpatory statements.

MOTION TO RECALL WRIT.

The State has filed a motion to recall the writ, asserting that the application was not filed within the 15-day period fixed by the trial court within which writs might be applied for, and that there was no extension of time. However, according to a letter from the trial judge filed in the record, an extension of time was granted at the request of defense counsel, but through inadvertence no formal minute entry was made. Since the extension of time for filing application for review was obtained and the application was timely filed within that extended period, the motion to recall the writ is without merit.

BILLS OF EXCEPTIONS
NOS. 1, 3, AND 4.

During this very brief trial of a misdemeanor before a judge, the State called as a witness Steven Brian, the victim of the battery. According to his testimony, Geary and Himel, the defendants, came to his room the day following the beating and

admitted that they had attacked him, apologized for having done so, and explained that it was a mistake. Prior to this testimony which included the inculpatory admissions of the defendants, defense counsel objected on the ground that the State had failed to give notice that a confession or inculpatory statement would be used, as it is required to do by Code of Criminal Procedure Articles 767 and 768. The objection was overruled, and the testimony of Brian detailing the inculpatory statements of the defendants was admitted. When the State questioned another of its witnesses, the campus security officer, concerning inculpatory statements made by Geary and Himel in his office, the defense objected on the ground that it had received neither written notice nor notice in an opening statement that the State intended to introduce confessions or inculpatory statements. Bills of Exceptions Nos. 1, 3, and 4 were reserved to these rulings.

The objections were founded upon Louisiana Code of Criminal Procedure Articles 766, 767, 768, and 769 defining the opening statement, prohibiting the State from adverting in the opening statement to a defendant's inculpatory statement, requiring the State to give notice of intent to introduce such a statement during the trial by advising the defendant in writing prior to the opening statement, making inadmissible a statement of which the State had not given notice as required, and prohibiting the admission of any evidence not within the scope of the opening statement.

It is the contention of the defense here that the opening statement and the written notice of intent to use an inculpatory statement are sacramental, and that the lack of notice, coupled with objection to the admission of the inculpatory statements, made them inadmissible. It is the State's contention that the opening statement and the written notice of intent to use a confession or inculpatory statement are not required in a non-jury trial.

### Opening Statement.

The question of whether an opening statement is required in a non-jury case was answered in the negative by this court in a unanimous opinion handed down on November 8, 1971, State v. Didier, 259 La. 967, 254 So.2d 262, so that citation of the Code articles relied upon and of that case would ordinarily be dispositive of the precise question arising in an opinion handed down so soon afterwards. In that brief period, however, there has been some division of the court in regard to the correctness of this recent pronouncement, and the majority therefore feels compelled to reconsider the question posed.

At the outset, a determination of the purpose of the opening statement will be helpful in deciding whether an opening statement is required in a bench trial. Prior

to our 1928 Code of Criminal Procedure we had no statutory law governing the opening statement, and would therefore have followed the common law. We are unable to discover any jurisprudence prior to the 1928 Code which concerns itself with the purpose or nature of the opening statement in a criminal proceeding. However, at common law it was uniformly stated that the purpose of the opening statement was to inform the jury of the course and conduct of the trial so that it would be better able to receive the testimony and other evidence in proper context during the trial. This original declaration of purpose has survived in our sister states with great

uniformity and only slight deviation to the present time under statutes as well as under the common law.[1]

After the adoption of our 1928 Code of Criminal Procedure, our courts had difficulty in determining the function of the opening statement under the new provision which was comparable to statutes of other states.[2] The court, in attempting to decide whether the opening statement was sacramental or merely mandatory but waivable and whether the opening statement should contain notice of intent to use a confession,[3] searched for the purpose of the opening statement under the new Code article in a series of cases between 1930 and 1934.[4]

1. 2 Bishop, New Criminal Procedure (2d ed. 1913), § 969, 791; Clark, Handbook of Criminal Procedure (2d ed. 1918), § 168, 532; 16 C.J. Criminal Law, § 2225, 889; 23A C.J.S. Criminal Law, § 1085, p. 97; Orfield, Criminal Procedure From Arrest to Appeal (1947), 356; Wharton's Criminal Law and Procedure (Anderson's ed. 1957), § 2033; 26 R.C.L. § 32, 1030; 53 Am.Jur., Trial, § 96, 86; State v. Erwin, 101 Utah 365, 120 P.2d 285; Lickliter v. Commonwealth, 249 Ky. 95, 60 S.W.2d 355; Wilkey v. State ex rel. Smith, 238 Ala. 595, 192 So. 588; People v. Reed, 333 Ill. 397, 164 N.E. 847; People v. Weller, 123 Ill.App.2d 421, 258 N.E.2d 806; Clarke v. State, 238 Md. 11, 207 A.2d 456; State v. Burruell, 98 Ariz. 37, 401 P.2d 733; State v. Prewitt, 104 Ariz. 326, 452 P.2d 500; Ragland v. State, 404 P.2d 84 (Okl.Cr.); State v. Chester, 445 S.W.2d 393 (Mo.App.): cf. State v. Feger, 340 S.W.2d 716 (Mo.), State v. Deppe, 286 S.W.2d 776 (Mo.), and State v. Loeb, 190 S.W. 299 (Mo.); Foster v. United States, 308 F.2d 751 (8th Cir. 1962); State v. Marmon, 154 N.W.2d 55 (N.D.); Bolden v. State, 199 Ind. 160, 155 N.E. 824: cf. Blume v. State, 244 Ind. 121, 189 N.E.2d 568, which relies upon 23A C.J.S. Criminal Law, § 1085, which in turn cites the Missouri case of State v. Deppe, supra.

2. Comparative legislation—Order of jury trials: Arizona—Code 1939, § 44–1808; California—Pen.Code 1941, § 1093; Indiana—Burns' Stat.1933, § 9–1805; New Mexico—Stat.1941, § 19–818; Ohio—Page's Gen.Code, § 13442–8; Utah—Rev.Stat.1933, § 105–32–1. See Dart's Code of Criminal Law and Procedure of the State of Louisiana (2d ed. 1943), p. 184.

3. A majority of the states would not allow any mention of an inculpatory statement in opening argument.

4. State v. Ricks, 170 La. 507, 128 So. 293 ("to enable the jury to understand and appreciate the testimony as it falls from the lips of the witnesses"), quoting from the New York case of People v. VanZile, 73 Hun 534, 26 N.Y.S. 390; State v. Ducre, 173 La. 438, 137 So. 745 (to make the district attorney show his

State v. Sharbino, 194 La. 709, 194 So. 756 (1940), restated the reasoning of the court in the earliest jurisprudence (see fn. 4), saying that the purpose of the opening statement was "to enable the jury to understand and appreciate the testimony as it falls from the lips of the witnesses". Some of our later cases have held that the purpose of the opening statement is to inform and enlighten the jury, State v. Clark, 231 La. 807, 93 So.2d 13 (1957); State v. White, 244 La. 585, 153 So.2d 401 (1963); and others have held that its purpose is to inform the court, the jury, and the defendant, State v. Jones, 230 La. 356, 88 So.2d 655 (1956); State v. Skinner, 251 La. 300, 204 So.2d 370 (1967); State v. Kreller, 255 La. 982, 233 So.2d 906 (1970). In the most recent case of State v. Dillon, decided December 13, 1971, 260 La. 215, 255 So.2d 745, we held the "opening statement is designed *only* to afford the jury a general acquaintance with the case to enable it to understand the testimony to be introduced". (Emphasis supplied.)

After a thorough study of the purpose of the opening statement at common law and under statutes of other states, and after research and study of the origin and development of our present codal provision and the Louisiana jurisprudence, we are of the opinion that the office of the opening statement is primarily to program the jury so that it may better follow and understand the evidence as it unfolds during the trial. See 3 La.L.Rev. 238; 14 La.L.Rev. 29.

In addition to its primary purpose the opening statement serves to inform both the defendant and the court. For this purpose it delineates the perimeter of the evidence, and the court and the defense are better able to monitor the presentation of the evidence. The opening statement may also upon occasion prepare the defendant to make a defense to an issue, yet this comes not by design but only as a byproduct.

We are of the opinion, however, that the defendant is not so well served by the opening statement that it is an essential procedure in the conduct of every trial.[5]

hand to the accused and advise the jury); State v. Shearer, 174 La. 142, 140 So. 4 (to make the district attorney show his hand, enabling the accused to better meet the issue and make his defense); State v. Silsby, 176 La. 727, 146 So. 684 (majority—to make the district attorney show his hand as to the State's evidence); State v. Elmore, 177 La. 877, 149 So. 507 (to make the district attorney show his hand to the defendant and to advise the jury); State v. Garrity, 178 La. 541, 152 So. 77 (must inform the judge and the jury of the nature of the charge and

the evidence by which he expects to establish it); State v. Bishop, 179 La. 378, 154 So. 30 (must inform the jury).

5. It was evident under the former law of New York, Code of Criminal Procedure Section 388, and the cases so held, People v. Kohilakis, 49 Misc.2d 213, 267 N.Y.S.2d 348; People v. Del Principe, 37 Misc.2d 428, 234 N.Y.S.2d 874, that an opening statement was not required in non-jury cases. New York's present law has codified that jurisprudence and has separated

We have under the prior Code and in jurisprudence recognized this, and have declared the opening statement non-essential in non-jury cases [6] and waivable in jury cases.[7] It was required in a jury trial under prior law, primarily so that, in all fairness not only to the jury but to the court and the defense, the trial could progress expediently and the evidence could be understood by the jury. State v. Ricks, 170 La. 507, 128 So. 293; State v. Sharbino, supra; State v. White, supra.

In light of these purposes and in the absence of relevant constitutional provisions, the present Code of Criminal Procedure must be considered in order to determine whether the opening statement has been

the order of trial for non-jury and jury cases. See Criminal Procedure Law, McKinney's Consol. Laws, c. 11, §§ 350.10, 260.30. In non-jury cases the court is permitted in its discretion to allow the parties to deliver opening statements. In jury cases it is mandatory that the State give an opening statement, and the defendant is permitted to do so.

6. See State v. Florane, 179 La. 453, 154 So. 417.

7. State v. Shearer, 174 La. 142, 140 So. 4; State v. Brown, 180 La. 299, 156 So. 359.

8. "Art. 766. Opening statement by state; scope
"The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge."
"Art. 767. Same; prohibition against adverting to confessions
"The state shall not, in the opening statement, advert in any way to a con-

made mandatory in bench trials.[8] Article 765, titled "Normal order of trial", provides:

"The normal order of trial shall be as follows:

"(1) The selection and swearing of the jury;

"(2) The reading of the indictment;

"(3) The reading of the defendant's plea on arraignment;

"(4) The opening statements of the state and of the defendant;

"(5) The presentation of the evidence of the state, and of the defendant, and of the state in rebuttal. The court in its

fession or inculpatory statement made by the defendant."
"Art. 768. Same; use of confession or inculpatory statement; notice to defendant prior to opening statement
"If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."
"Art. 769. Same; effect on introduction of evidence
"Evidence not fairly within the scope of the opening statement of the state shall not be admitted in evidence.
"If the state offers evidence that was inadvertently and in good faith omitted from the opening statement, the court, in its discretion may admit the evidence if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense."

discretion may permit the introduction of additional evidence prior to argument;

"(6) The argument of the state, the defendant, and the state in rebuttal;

"(7) The court's charge;

"(8) The announcement of the verdict or mistrial in jury cases, or of the judgment in nonjury cases; and

"(9) The discharge of the jury in jury cases.

"When there is more than one defendant, the court shall determine the order of trial as between them.

"A defendant may waive his opening statement." (The line of separation between (4) and (5) has been added.)

It was clear from a reading of the source of our present article (Article 333 of our 1928 Code of Criminal Procedure, which became R.S. 15:333 of the Revised Statutes of 1950) that its provisions applied only to jury trials. See State v. Florane, 179 La. 453, 154 So. 417; see also State v. Jones, supra; State v. Smith, 212 La. 863, 33 So. 2d 664. The present article, however, found under "Trial Procedure: General Provisions", is not limited to jury trials, and to that extent we agree with the statement of the coordinator and reporter for the revision of the Code of Criminal Procedure that Article 765 *is not limited* in

its scope to jury trials.[9] However, this does not resolve the question here presented, for it is obvious that some of the provisions by their very language can apply only in jury cases: For example, (1) selection and swearing of the jury; the first part of (8) regarding announcement of verdict or mistrial in jury cases; and (9) the discharge of the jury. Proceeding from the premises that the normal order of trial in a non-jury case is indeed set forth by Article 765 but that not all provisions of that article can apply to a non-jury case, we determine the issue before us by ascertaining which provisions of that article do prescribe the normal steps in a non-jury trial.

▬ In Article 761, the first article in the chapter which includes Article 765, it is stated: "A jury trial commences when the first prospective juror is called for examination. *A trial by a judge alone commences when the first witness is sworn.*" (Emphasis supplied.) This article is most pertinent to a determination of our question. The demarcation line added after the first four provisions in our quotation of Article 765, above, indicates the commencement of a non-jury trial. The provisions above the line cannot constitute the "normal order of trial" in a non-jury case because Article 761 has declared that pro-

---

9. "Article 765, which states the normal order of trial, is not limited to jury trials. Orderly and predictable proceedings are desirable in all trials." Bennett, The 1966 Code of Criminal Procedure, 27 La.L.Rev. 175, 215 (1966).

vision (5), presentation of evidence, is the first step in a non-jury trial. There has been no change in the law in this regard (former R.S. 15:332), and we conclude that now, as formerly, trials before a judge alone must by specific mandate of the Code begin with the swearing of the first witness. Therefore the first four provisions of Article 765, which include the requirement for an opening statement, cannot apply to the normal order of a bench trial.[10] We therefore conclude that there is no requirement for an opening statement in a non-jury trial.

### Written Notice of Intent to Use Confession or Inculpatory Statement.

Inasmuch as the opening statement is not required in a bench trial, neither is the written notice of intention to use a confession or inculpatory statement.

The official comment under Article 765 of our present Code points out that the provisions of former R.S. 15:333 describing the scope of the State's *opening statement* are omitted from Article 765 and are now treated in Articles 766–769. The titles of these articles show that all are concerned with the "Opening statement by the state".

(See fn. 8.) The comment states that Articles 767 and 768 are an attempt to remove the prejudicial effect of giving notice in the presence of the jury of intent to use a confession or inculpatory statement while retaining the defendant's right to be apprised of this intent at the beginning of the trial.

The defendants appear to argue that they had a special right in the nature of discovery to these oral inculpatory statements. However, the jurisprudence and now the Code of Criminal Procedure have made significant differences between the written and the oral inculpatory statement. Ever since State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945), the defendant's right to pre-trial inspection of his own written confession has been recognized in the jurisprudence, and our Code of Criminal Procedure Article 703 makes the written confession subject to the motion to suppress. The category of the written confession has been enlarged jurisprudentially to include video-tape recorded confessions. State v. Hall, 253 La. 425, 218 So.2d 320. No right of discovery has been granted for oral confessions or inculpatory statements either by Code or by jurisprudence.[11]

---

10. If opening argument were mandated in bench trials, our city courts, traffic courts, other courts of limited jurisdiction, and the misdemeanor sections of our district courts would be unduly burdened with an unnecessary and time-consuming procedural device to further crowd their already clogged dockets. At a time when

millions of dollars are being spent nationwide to find more expeditious ways and means of administering criminal justice, it is fortunate that our Legislature has not made this step backward.

11. The comment under Articles 766–769 states categorically that the revision com-

Inculpatory statements are treated in parity with the evidence to be disclosed in the opening statement. The effect of the holding in the recent case of State v. Lacoste, 256 La. 697, 237 So.2d 871, was to make the exception to the exclusion of evidence under Article 769 applicable to the notice of the confession or inculpatory statement under Article 768. This treatment of the inculpatory statement shows it to be no more and no less important than the other matters which are included in the opening statement. Therefore the reasons we have assigned for holding that the opening statement is not a procedural requirement in non-jury trials support our conclusion that the State is not required to give written notice of its intent to use a confession or inculpatory statement in non-jury trials.

We reaffirm the holding in State v. Didier, supra, in the conclusion that the opening statement is not a requirement in a non-jury trial. We further hold that written notice of intent to use a confession or inculpatory statement is not a requirement in a non-jury trial.

*Failure to Give Miranda Warnings.*

■ It is also alleged in the bills of exceptions that the inculpatory statements made to the campus security officer were inadmissible because the defendants were not given the Miranda warnings (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694) before making these statements to that officer. The guidelines of Miranda are prescribed for governmental law enforcement officers, who must give these warnings to an accused before he makes statements in response to custodial interrogation by them. Geary and Himel went voluntarily to the office of the university security officer. They were not deprived of their freedom and did not make these statements under interrogation by governmental law enforcement officers.

Defendants argue in brief that the State failed to lay the required foundation of showing the free and voluntary character of these statements. This ground, however, was not urged in objection upon reservation of the bills and was not recited as a basis of objection in the bills as perfected.

The bills of exception are without merit.

The convictions and sentences are affirmed.

SUMMERS, Justice (concurring in part and dissenting in part).

Thorn B. Himel, Cyril Geary and Timothy N. Kennedy were charged by bill of

---

mittee purposely avoided meeting the problem of discovery procedure in criminal cases. While the comment says that the defendant is entitled to notice at the beginning of trial of intent to use inculpa-

tory statements so that he may "meet the issue", it recognizes that in fact that notice comes too late to be useful to the defense.

information with simple battery of Steven Brian. La.Crim.Code art. 35. Kennedy was granted a continuance, and, upon motion of the State, a severance was ordered; after which defendants Himel and Geary were jointly tried before the judge. They were found guilty; and a fine and jail sentence were imposed, the jail sentence being suspended and defendants were placed on probation for one year. Applications for writs were filed in this Court to review the conviction and sentence under Article VII, Section 10, of the Constitution. Writs were granted, 258 La. 546, 246 So.2d 858 (1971), and the case is before us under our supervisory jurisdiction.

Defendants and the victim of the battery were students at Louisiana State University in Baton Rouge. In the early morning hours of September 20, 1970 defendant Geary bumped into one Mike Harder, a visiting football player, in the hallway of the Kirby-Smith dormitory on the University campus. Harder was accompanied by a number of friends. Words were exchanged between Geary and Harder, and, from this slight provocation, Harder proceeded to strike Geary repeatedly with his fists, kicking him when he fell to the floor. All the while Harder's friends looked on, not intervening or otherwise assisting Geary. When they withdrew from the encounter, Geary proceeded to his cousin Thorn Himel's dormitory room. When Himel learned what had transpired, he called several of his friends for their help, and together they set off with Geary through the dormitory in search of Harder. Beginning at the site of the altercation between Harder and Geary, Himel and his companions looked into several rooms for Harder. Finally they entered the room where Steve Brian and his roommate were asleep. Mistaking Brian for Harder, they threw a sheet over his head and proceeded to beat him about the head and body, dragging him to the floor and kicking him as he lay there. Brian's roommate was awakened by the melee and demanded that the attackers lay off. Himel and his accomplices then departed.

It was later ascertained by Himel and Geary, and the others involved with them, that they had mistaken Brian for Harder. Realizing the error, Himel, Geary and the others went to Brian the next day and extended their apologies, explaining that they believed him to be Harder at the time of the battery. Himel and Geary were later called to the campus security office and questioned by Security Officer Luke McCoy, at which time they made inculpatory statements.

I.

At the outset we are urged to grant a motion by the State to recall the writs as improvidently issued. The motion rests upon the assertion that the application for writs was not timely filed. Supporting al-

legations set forth that on April 2, 1971 when defendants declared their intention to apply to this Court, the trial judge granted fifteen days to lodge their application here. The application was not filed within the time fixed, and, it is further alleged, no extension of time was granted.

The allegation that no extension of time was granted is incorrect. A letter from the trial judge, filed in the record, recites that he *did* grant an extension of time at the request of defense counsel; however, through inadvertence no formal minute entry was made of this action. Thereafter, the application was timely filed within the extended return date.

Since an extension of time for filing the application was obtained by defense counsel, and the failure to enter this action of the court in the minutes has not been assigned to his fault, the motion to recall is without merit. La.Code Civ.P. art. 2201; Rule XII, Sec. 2, La. Supreme Court Rules.

I concur with the majority on this issue.

## II.

During trial the State called the victim Brian to the stand to testify for the prose-

cution. He testified that Geary and Himel came to his room the day following the fracas and apologized, saying they were sorry about the beating. According to Brian, Himel admitted at the time that he had struck Brian.

Prior to this testimony, defense counsel objected that the State was attempting to elicit evidence of a confession or inculpatory statement without having made an opening statement and without furnishing defense counsel with written notice that a confession or inculpatory statement would be used as required by Articles 767 and 768 of the Code of Criminal Procedure.[1]

The objection was overruled and evidence of the inculpatory statements or confessions was admitted. Similar objection and ruling were made when the State questioned campus Security Officer McCoy concerning the admission made by Geary and Himel in his office. Bills of exceptions were reserved in each instance.

The articles upon which the objections are founded prohibit the State from adverting in the opening statement to a confession or inculpatory statement made by defendant; and require that defendant be advised in writing prior to the opening

---

1. La.Code Crim.Proc. Art. 767:
   "The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant."
   La.Code Crim.Proc. Art. 768:
   "If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."

statement if a confession or inculpatory statement will be used in evidence. La. Code Crim.Proc. arts. 767, 768. This much is clear. But the matter does not rest there, for an issue is raised by the State's contention that these requirements pertain to jury trials and are inapplicable to this bench trial of misdemeanors.

### The Opening Statement

Under Title 15, Section 333 of the Revised Statutes, in effect prior to the enactment of Article 765 of the present code, which became effective January 1, 1967, it was understood that it was only in cases where the trial was before a jury that the district attorney was required to make an opening statement. State v. Florane, 179 La. 453, 154 So. 417 (1934). See also State v. Jones, 230 La. 356, 88 So.2d 655 (1956), and State v. Smith, 212 La. 863, 33 So.2d 664 (1948). This result was reached because Title 15, Section 333 of the Revised Statutes setting forth the "Steps in trial" was limited to jury trials and no codal direction existed relating to non-jury trials. The procedure for bench trials was, then, left largely to the trial judge influenced by local practices and customs.

Article 765 of the new code, however, which states the "normal order of trial," is not limited to jury trials for the reason, as Professor Bennett states, "orderly and predictable proceedings are" now considered "desirable in all trials." He also observes, "At a time when all members of the bar are faced with the responsibility of defending indigent defendants, it is particularly important that the rules governing the trial of criminal cases be stated as fully and clearly as possible." Bennett, The 1966 Code of Criminal Procedure, 27 La.L.Rev. 175, 215 (1966).

Thus when Article 765 provides for "The opening statements of the state and the defendant" and provides that "A defendant may waive his opening statement" without according a like option to the State, and without a special reference to whether these requirements relate to jury or nonjury trials, the clear meaning which emerges from this article is that an opening statement is required by the State in all cases—jury and nonjury alike. The article (765[8]) makes special reference to the verdict in jury cases and the judgment in nonjury cases, clearly establishing an intent that the article shall apply to jury and nonjury cases. Otherwise the generality of the words of Article 765 denies any attempt to restrict their application to jury trials alone.

In support of this position it is relevant to note that variations in trial procedure authorized in Article 1632 of the Code of Civil Procedure are not permitted in criminal cases. It has been said that to allow trial procedure variations in criminal trials would be "dangerous". Nevertheless, the comments to Article 765 of the Code of

Criminal Procedure point out that "Variations can occur, of course, if defendant does not object, but the court should not have the power to order variations over the defendant's objections."

Some views expressed in our cases indicate that the opening statement is principally designed to benefit the defendant, for it enables him to prepare his defense. State v. Jones, 230 La. 356, 88 So.2d 655 (1956); State v. Silsby, 176 La. 727, 146 So. 684 (1933); State v. Ducre, 173 La. 438, 137 So. 745 (1931). Article 766 of the Code of Criminal Procedure directs that "The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge." Following is the prohibition in Article 769 against adverting in any way to a confession or inculpatory statement made by the defendant. The opening statement serves to fix the time for furnishing written advice that a confession or inculpatory statement will be used against the defendant, otherwise it cannot be used in evidence. La.Code Crim.Proc. art. 768. By the terms of Article 768 the opening statement serves to fix the scope of the evidence the State will be permitted to introduce. These requirements are of vital importance to the defense in any trial, jury or nonjury. The function of the opening statement, therefore, is not confined to informing the jury and it serves a definite essential purpose in all trials. Note, 3 La.L.Rev. 238 (1940).

From these codal articles and our former jurisprudence it follows in reason and logic that defendant may demand that an opening statement be made in any trial. The right, however, like others, may be waived. In this State it is waived by failing to timely object when it is not given. State v. Shearer, 174 La. 142, 140 So. 4 (1932), and State v. Brown, 180 La. 299, 156 So. 359 (1934). Here defendants made no objection to the failure to make an opening statement, and it may be considered waived.

I am aware of the fact that in State v. Didier, 259 La. 967, 254 So.2d 262, we recently expressed a different view concerning the requirement of an opening statement in a bench trial. However, the result in that case on this issue could be considered correct, for defendant did not timely object to the failure to make the opening statement, waiting to voice objection after the first witness was sworn. Thus a waiver took place. State v. Shearer, 174 La. 142, 140 So. 4 (1932). Although I subscribed to the Didier opinion, after further reflection, I cannot reconcile the expressions in the Didier Case on the requirement for an opening statement in a bench trial with my present view.

The majority asserts that Article 761 of the Code of Criminal Procedure fixes the

commencement of the trial when the first witness is sworn in a bench trial and because of this the opening statement which precedes the presentation of evidence under Article 765 is not part of the "normal order of trial." This conclusion is not warranted from a reading of the articles on trial procedure. Article 761 is an enactment designed to fix definitely the point of beginning of the trial in order that it may be ascertained when jeopardy begins (La. Code Crim.Proc. art. 592), when a motion to quash must be filed (La.Code Crim.Proc. art. 535) and to measure limitations for the prosecution (La.Code Crim.Proc. art. 578).

Because the specific provision of Article 761 fixed a point at which jeopardy begins, or the point from which the time for filing a motion to quash must be calculated, or the time from which the limitation for the prosecution is measured, does not mean that the Code could not, as it does in Article 765, provide, as part of required procedure, for an opening statement by the prosecution prior to the commencement of the trial. To refer to such an opening statement as part of the "normal order of trial" in the broad sense in which the word "trial" can be used does not render the requirement unenforceable.

What the majority has done by its strained interpretation, is to eliminate from the requirements of a bench trial the reading of the indictment, the reading of defendant's plea on arraignment and the opening statement. This leaves in effect only the requirement of Article 765 setting forth the order for presentation of the evidence, the order of argument and the announcement of the judgment applicable to bench trials, for I suppose the reasoning of the majority would also eliminate the Court's charge as applicable to jury trials only. Of course, the discharge of the jury in jury cases is inapplicable to bench trials. This emasculation of Article 765 leaves one to wonder what was accomplished by the codal article, except a statement of the obvious.

Undoubtedly the majority has rewritten the law on the basis of a footnote finding, not supported by the record, that requiring an opening statement in bench trials "would unduly burden the courts" with an "unnecessary and time-consuming procedural device to further clogg their already clogged dockets." Even if this finding were supported by the record, which it is not, and leaving aside the merits or demerits of such a conclusion, the fact remains that the resolution of such a question is a legislative prerogative and not a judicial function.

In my view, the purpose of requiring an opening statement in bench trials where they were not required before, was, among other considerations, to afford defendant in those trials the same safeguards for limiting the scope of the evidence the State may properly introduce which is afforded

in a jury trial and assured by Articles 766 and 769 of the Code of Criminal Procedure. Thus, when the Court writes out the requirement of an opening statement it takes from defendant a valuable right the legislature saw fit to confer.

### Written Notice of Intent to Use Confession or Inculpatory Statement

Not only is there a failure to make an opening statement in this case, but there is also a failure by the State to furnish written advice that a confession would be used. Under these circumstances, when the conclusion is reached that defendant waived the opening statement by failing to object, the question arises whether this waiver also has the effect of curing the State's failure to furnish written advice that confessions and inculpatory statements would be used.

Though the requirement that an opening statement must be made before the introduction of evidence is presumed to be waived by a failure to timely object, the result is otherwise with respect to the failure to give written advice that a confession will be used. The penalty for the failure to furnish this advice timely is to render the confession inadmissible. Therefore, it is sufficient for defendant to object to its admissibility when it is offered as was done in this case. No objection when the opening statement is due under Article 768 is required. There is nothing in this record which would lead us to even suppose that defendants were aware that these confessions or inculpatory statements would be used against them; nor does the record support a finding that defendants waived the right to receive written notice that they would be used.

It follows, therefore, that defendant must be advised in writing prior to the opening statement if a confession or inculpatory statement is to be used against him, and waiver of the opening statement does not relieve the State of the necessity for furnishing the written advice. This written advice should be furnished just prior to the time when the opening statement is due, even if the opening statement is waived. Although by Article 768 the opening statement and the written notice are mentioned together, these two are not necessarily altogether interdependent. The opening statement in this context serves only to fix the order in which the written advice must be furnished. The requirement for written advice that a confession will be used can therefore stand alone when an opening statement is waived.

In State v. Lacoste, 256 La. 697, 237 So. 2d 871 (1970), the State, in good faith, failed to advise defense counsel prior to the opening statement that an inculpatory statement made by defendant would be used against him. Later, however, defendant was furnished the written advice twelve hours before the inculpatory statement was

introduced. Moreover, the record in the Lacoste Case did not reflect prejudice by the delay. La.Code Crim.Proc. art. 921. We found the failure to comply with Article 768 to be harmless error.

Here, however, my study of the record makes it quite clear that the inculpatory statements were the heart of the prosecution's case against these defendants; thus the prejudice is patent.

The right thus accorded to receive written advice that a confession or inculpatory statement will be used against the defendant is not made ineffective because defendant has the right to pretrial inspection of written confessions or inculpatory statements recognized by Article 703 of the Code of Criminal Procedure. But, assuming that the rights conferred by Article 703 did make the *written* advice unnecessary, this would not solve the defendant's need to be advised of *oral* confessions or inculpatory statements in order that he might properly prepare his defense. For no statute or decision grants a defendant the right to pretrial discovery of oral confessions or inculpatory statements. As the comment to Article 769 declares, "The defendant cannot properly prepare to meet the issue unless he is apprised that the state intends to use the confession." Even so, this advice to defendant comes at a very late time.

Here no advice that the inculpatory statements were to be used was given to defend-ants until the testimony concerning them was introduced over defendants' objections. This ruling of the trial court and the majority opinion fails to come to grips with the positive statement in Article 768 that "If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."

I dissent from the majority opinion on this issue.

### III.

Another complaint is that the inculpatory statements made by Geary and Himel to the campus security officer were not free and voluntary. A reading of the transcript of testimony recorded at the trial satisfies the requirement that inculpatory statements, like confessions, be freely and voluntarily made. Geary and Himel were requested by McCoy to call at the campus security office. They responded to the call and appeared at his office of their own free will and accord. No persuasion, intimidation, promise of reward or other improper influence was exerted by McCoy or others to bring about their appearance or the giving of information after arrival.

Despite these circumstances, the defense contends the latent threat of expulsion or other disciplinary action by school authori-

ties if they failed to cooperate with McCoy was an undue influence which compelled Geary and Himel to comply. The compulsion to obey school regulations and cooperate with its authority, like the moral suasion to do right, is only an admirable trait of character influencing a student's behavior. It is not a compulsion to which the odium of a forceful threat should be attributed.

I concur on this issue.

## IV.

The final assignment of error relates to the contention that Geary and Himel were not given the Miranda warnings prior to questioning by McCoy, the campus security officer.

Aside from the fact that the record does not establish any official status of McCoy as a law enforcement officer, except as an employee of the University, I am satisfied that the Miranda requirements are not applicable here. As I read that case its guidelines apply to statements "stemming from custodial interrogation", and that "by custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action . . . ." 384 U.S. 436, 86 S.Ct. 1602 (1966).

None of the drama which sets the scene for the Miranda warnings is present in this case. Geary and Himel were not in custody; they were in the campus security office of their own volition; they were not questioned by law enforcement officers; and they were not deprived of their freedom in any manner.

Furthermore, the offense charged here is a misdemeanor. La.Crim.Code art. 35. In these cases we have not required the Miranda warnings and there is no intimation in the Miranda decision that courts should do so. In State v. Angelo, 251 La. 250, 203 So.2d 710 (1967), the reason for not requiring the Miranda warnings in misdemeanor cases is stated. In Louisiana, as in all other states, innumerable acts considered relatively trivial are made misdemeanors. The great number of these lesser offenses and the limited number of law enforcement officers were felt to be factors militating against the necessity for strict, highly formalized procedural safeguards where misdemeanors are involved. It was noted in State v. Angelo that in Miranda and its related cases the United States Supreme Court was considering felony prosecutions. Thus we concluded, "We cannot construe the holding in that case (Miranda) to mean that statements of an accused in a misdemeanor case cannot be used unless the officers have informed him prior to questioning that he has the right to the presence of an attorney, and that if he cannot afford one, counsel will be appointed for him before questioning if he so desires."

For the reasons assigned under Part II of this opinion, the conviction and sentence should be set aside and the case should be remanded for a new trial. I dissent from the Court's refusal to so order.

SANDERS, Justice (dissenting).

In my opinion, Bill of Exceptions No. 1, reserved to the admission of the oral confessions in evidence, has merit.

The defendants objected to the admission of these confessions, because the District Attorney gave them no written notice of his intention to introduce the confessions as required by Article 768 of the Louisiana Code of Criminal Procedure.

Article 768 provides:

"If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."

The majority holds that this Article is inapplicable to non-jury trials. Apparently the written notice of the intention to use a confession would be eliminated whether the non-jury trial be for a felony or misdemeanor.[1] I do not share this view.

By its terms, the Article is not limited to jury trials. It provides a salutary rule whereby the District Attorney must give notice prior to the beginning of the trial of his intention to introduce inculpatory statements. The rule is vitally important to a defendant in any criminal prosecution. It enables the defendant to prepare to meet the issues that may arise from an attempt to use a statement against a defendant at the trial. However, it is especially important in the case of oral confessions. Such oral confessions are not subject to pre-trial discovery. State v. Hall, 253 La. 425, 218 So.2d 320 (1969); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966); State v. Lea, 228 La. 724, 84 So.2d 169 (1955). Neither are oral confessions a proper subject for the motion to suppress. See L.S.A.–C.Cr.P. Art. 703. Hence, as to oral confessions, a defendant must rely solely upon the District Attorney's written notice to organize the defense.

Although the matter is not free from difficulty, I would apply Article 768 to all jury trials and all non-jury trials prosecuted by the District Attorney. See L.S.A.–C.Cr.P. Art. 15.

The omission of the written notice in the present case is reversible error. The oral confessions represented the crucial element of the State's case against the defendants. It is apparent that the defendants were prejudiced in making their defense. See L.S.A.–C.Cr.P. Art. 921; State v. Jack-

---

1. The jury may be waived in all non-capital felonies not necessarily punishable by imprisonment at hard labor. LSA–C.Cr.P. art. 780.

son, No. 51,240, handed down January 17, 1972, 260 La. 561, 256 So.2d 627. Hence, the harmless error doctrine of State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970), is inapplicable.

In considering the omission of the Miranda warnings, the majority overlooks our decision in State v. Angelo, 251 La. 250, 203 So.2d 710 (1967). Nonetheless, the final result reached on that issue is correct.

For the reasons assigned, I respectfully dissent as to Bill of Exceptions No. 1.