338 So.2d 97 (1976)
STATE of Louisiana
v.
Aubrey R. BOLEN.
No. 57999.
Supreme Court of Louisiana.
October 6, 1976.
*98 James S. Gravel, Alexandria, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., L. Paul Gianfala, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Aubrey Bolen was charged with the negligent homicide of Susan Story, a violation of R.S. 14:32. Defendant was tried before a judge, without a jury. The trial judge found the defendant guilty as charged and sentenced him to five years at hard labor, which sentence the trial court suspended. The defendant was placed on active probation for three years.
On August 11, 1975, William Galloway arrived at Ruby Red's in Alexandria at approximately 6:00 p. m. The defendant arrived at about 8:00 p. m. Susan Story, the decedent, met Galloway at Ruby Red's at 9:00 p. m. Galloway, Ms. Story and a friend, Frank Shelfo, left Ruby Red's at approximately 10:00 p. m. and went driving in an automobile for about forty-five minutes. They then returned to Ruby Red's and stayed there until closing time at 12:00 midnight, when they walked out on the parking lot. Decedent was struck and fatally injured by defendant's motorcycle on the parking lot.

Assignment of Error No. 1
In this assignment the defendant contends that the trial court erred in refusing to order the State to make an opening statement. While Articles 766-769 of the Code of Criminal Procedure provide the rules governing the use and scope of the State's opening statement, this court has *99 held that in misdemeanor cases an opening statement is not required. State v. Layssard, 310 So.2d 107 (La.1975); State v. Himel, 260 La. 949, 257 So.2d 670 (1972); State v. Didier, 259 La. 967, 254 So.2d 262 (1971). One of the functions of the opening statement is to acquaint the jury with the case so that they may better understand the evidence. The trial judge in the case before us had tried a companion case the day before.
Another function of an opening statement is to inform the defendant of the nature of the charge and evidence by which the State intends to prove its case so as to prevent the defendant from being unfairly surprised. State v. Roquemore, 292 So.2d 204 (La.1974). Defendant does not complain of surprise. Even in jury cases, modern jurisprudence has left the scope and extent of the opening statement to the sound discretion of the trial judge. State v. Clark, 231 La. 807, 93 So.2d 13 (1957); C.Cr.P. 769 and Official Revision Comments thereunder.
In this case no useful purpose would have been served by an opening statement, and we find no error in this assignment.

Assignment of Error No. 2
During the trial William B. Galloway testified for the State. On cross-examination he stated that about two hours before the accident he had left Ruby Red's and gone driving around in a car for awhile and then had come back to Ruby Red's. Defense counsel asked him if he or any one else had smoked marijuana while in the car at that time. Mr. Galloway stated that no one had. Galloway, Frank Shelfo and the victim had been in the car together. Later, when Mr. Shelfo was under cross-examination, defense counsel asked him the same question and, over defense counsel's objection, the witness was allowed to take the Fifth Amendment. Defendant intended to use Mr. Shelfo's testimony for two purposes: to demonstrate that the smoking of marijuana could diminish the witness' perception or recall of the events of the accident; to impeach the testimony of William Galloway.
The defendant contends that since Mr. Shelfo had testified as to the material facts of the accident, he had waived his right to invoke the Fifth Amendment. In addition he claims that the refusal to order the witness to answer the question deprived the defendant of his rights under R.S. 15:486 which states:
"Each side has the right to impeach the testimony and the credibility of every witness sworn on behalf of the other side."
Here we have a conflict between the defendant's right to impeach the testimony of prosecution witness Galloway and the witness' right to invoke his privilege against self-incrimination. United States Constitution, Amendment V; Louisiana Constitution of 1974, Art. I, § 16; La.R.S. 15:276. While a defendant waives his Fifth Amendment privilege when he takes the stand (State v. Shelby, 308 So.2d 279 (La.1975); State v. Collins, 283 So.2d 744 (La.1973)), a witness who is not the accused may, under certain circumstances, take the stand and testify as to some matters and invoke the Fifth Amendment as to others. In State exrel Doran v. Doran, 215 La. 151, 39 So.2d 894, 896 (1949), this court held:
". . . [I]f a person voluntarily takes the witness stand, whether as a mere witness or as a party in the case, giving testimony during which he discloses a fact or transaction, he is deemed to waive this immunity and thereby subjects himself to cross-examination with respect thereto. 147 A.L.R. 256; 58 Am.Jur. 78, Sections 94 and 95. However, where the witness voluntarily takes the stand for the purpose of testifying as to one issue only, he cannot, under cross-examination, be made to testify against his will concerning matters that are wholly unrelated to that issue. . . ."
As stated in the federal jurisprudence:
"The general rule is that a witness who has testified to incriminating matters on direct examination has waived the privilege as to those matters and may not *100 decline to answer on Fifth Amendment grounds when cross-examined. Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951)." United States v. Stephens, 492 F.2d 1367, 1375 (6th Cir. 1974).
In addition, in United States v. Johnson, 488 F.2d 1206 (1st Cir. 1973), the court stated:
". . . [W]hen a witness voluntarily testifies to certain facts, he may not invoke the privilege as to details . . ."
See also, In re Master Key Litigation, 507 F.2d 292 (9th Cir. 1974).
Here the record indicates that on direct examination this witness did not discuss the 10:00 p. m. car ride at all. In fact the only reference to leaving Ruby Red's before closing time was made when the witness apparently misunderstood the prosecutor's question:
"Q All right, Sir. Now, approximately what time did you leave that place, Ruby Red's, that night, Sir?
A UhAbout 10:30 or 11:00.
Q About 10:30 or 11:00? And did you come back?
A What do you mean, leave to go home or what?
Q All right let me rephrase the question. Approximately what time did you leave the place with the intention of not coming back to the place?
A To go home, in other words?
Q Yes Sir.
A UpI don't know. It was before closing time. About 30 minutes. Eleven something."
There was no reference to an incriminating event on direct examination, nor did the witness discuss any fact or transaction that would relate in any way to smoking marijuana in a car an hour or two before the accident.
Furthermore, the transcript reveals that at the time the witness first invoked his privilege, the trial judge recessed the trial and met with the witness in chambers. The per curiam to this assignment of error reveals that in that confidential meeting, the witness informed the court that he and two other persons had all smoked marijuana while riding in the car. Since the trial judge was the finder of fact in this case, the defendant actually accomplished both purposes for which he sought to elicit this testimony from the witness. In his per curiam the trial judge stated:
"Additionally, it had already been established that the witness had been drinking alcoholic beverages and that his ability to observe the accident and to accurately relate what he observed was thereby impaired."
After the conversation with the witness in chambers the trial judge was aware of the conflict in the testimony on the car ride given by Galloway and the admission by Mr. Shelfo in chambers. The impeachment of Galloway was thus effectively accomplished. There was no error in refusing to order the witness to testify over his assertion of his Fifth Amendment privilege.
Finding no error, the judgment of the trial court is affirmed.
SUMMERS, J., dissents.