437 So.2d 330 (1983)
STATE of Louisiana, Appellee,
v.
Jesus RUIZ & Geoffrey Austin Sweeney, Appellants.
No. 15526-KA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 1983.
Stay Order Denied September 19, 1983.
Writ Denied November 4, 1983.
*332 Lee E. Ineichen, Jr., Monroe, for appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Baton Rouge, Johnny Parkerson, Dist. Atty., 4th Judicial Dist., Nancy F. Gilliland, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, FRED W. JONES, Jr., and SEXTON, JJ.
SEXTON, Judge.
Defendants Jesus Ruiz and Geoffrey Sweeney appeal their conviction in a bench trial on August 17, 1982, for the offense of possession of marijuana with intent to distribute, and the subsequent sentence of Ruiz to two and one-half years imprisonment at hard labor and the sentence of Sweeney to one and one-half years at hard labor.
The defendants were jointly charged and jointly tried, and neither presented evidence at the conclusion of the State's case. The defendants originally assigned nineteen errors, but have not briefed Assignment Nos. 5 or 16. These are therefore deemed abandoned. State v. Domingue, 298 So.2d 723 (La.1974).

*333 FACTS
At approximately 9:45 a.m. on March 9, 1982, narcotics officer David Foy of the Arkansas State Police telephoned Deputy Toney of the Ouachita Parish Sheriff's Office. Foy advised Toney that a bright yellow 1977 Dodge van with Texas license plate number TJ 4947, containing over eight pounds of marijuana, would be arriving in the Monroe area in fifteen to twenty minutes. Foy further advised Toney that the van would be driven by a Mexican male named Jesus Ruiz, and provided a description of Ruiz. Foy stated that the van would eventually enter I-20, headed toward Texas. Foy further related that he had a reliable confidential informant who had personally observed the marijuana in the van. Moreover, Foy related he himself had followed the van to the Louisiana state line.
Deputy Toney directed that a broadcast be transmitted to all sheriff patrol units at approximately 11:10 a.m., instructing officers to be on the lookout for the described van. The broadcast instructed officers to stop the described van and detain it for Toney in connection with a drug investigation. At approximately 11:30 a.m., Deputy Donald Duncan stopped a van matching the description given and, upon being advised that Deputy Gary Telano was in the area, waited for Telano to join him. Approximately five minutes later, Deputy Duncan stopped the van, which was headed west on I-20, just inside Ouachita Parish. Officer Duncan asked the driver, defendant Ruiz, to get out of the van. Duncan confiscated an exposed hunting knife from Ruiz's belt and then conducted a "pat down" search. Duncan testified that Ruiz was not arrested at that time nor advised of his rights.
In the meantime, Deputy Telano had arrived. After being informed by Duncan that there was a passenger in the van, Telano asked the passenger, defendant Sweeney, to also disembark. Deputy Telano advised Sweeney that he was being detained by authority of narcotics officer Toney. Toney arrived shortly thereafter.
Upon Toney's arrival, he advised Sweeney of his rights, and stated that he understood marijuana was contained in the vehicle. Toney inquired as to the ownership of the vehicle and requested permission to search it. Sweeney refused to say who owned the van, and was evasive in his responses to Toney's questioning. At this point, Deputy Toney formally placed Sweeney under arrest and advised him of his rights. A search of Sweeney's person uncovered a bag of marijuana, a roach clip, a pipe, some pills, and a box of matches. Ruiz was also formally arrested and advised of his rights at that time. A search of Ruiz uncovered approximately $2,500.00 in cash, which was confiscated.
Subsequent to these events, Deputy Toney decided to transport the van to the metro narcotics unit in Monroe and obtain a search warrant. According to the testimony of Officer Telano, Sweeney, while en route to the jail, advised Telano that he wanted to speak with Deputy Marcus Clark who had been at the scene of the arrest.
Officers Clark and Toney testified that at approximately 3:00 p.m. that same afternoon, they went to Sweeney's cell, advised him of his Miranda rights, and subsequently interrogated him. According to the officers' testimony, they asked Sweeney how much marijuana was originally in the van, to which he replied that he had only given Ruiz a ride. The officers testified that Sweeney also told them that there had originally been three bags of marijuana, and that only one remained. Sweeney was apparently operating under the assumption that the deputies had already found the large bag of marijuana concealed in the van since, in response to Toney's question as to what the bag looked like, Sweeney replied with words to the effect, "Ya'll already have it." Toney conceded in his testimony that his response to that reply of Sweeney was to the effect, "I know, but what does it look like?" According to the officers' testimony, a search warrant was drafted after this interrogation.
A search warrant was signed by a district judge at 5:05 p.m. The search began at 5:20 p.m., and was completed at 5:45 p.m. During the course of the search, an animal *334 feed bag full of marijuana weighing just under nine pounds was found in a cabinet in the van.
It was the testimony of the officers that they returned to the jail after the search and interviewed both defendants. A rights waiver form was signed by Sweeney at 6:14 p.m.
The testimony of defendant Sweeney differed in significant respects from that of Officers Toney and Clark. Sweeney denied ever asking to speak with Deputy Clark. He denied being interrogated by police officers at 3:00 p.m. in the afternoon, and insisted that he was questioned later in the afternoon at some time after 5:30 p.m., at which time he was not advised of his Miranda rights. Sweeney insisted, moreover, that at the time of his interrogation he obtained a copy of the search warrant from the officers, attached to which was a "return" invoice from the search. The clear import of Sweeney's testimony was that the jail cell interrogation occurred only after the search had been conducted.

Excessive Sentences Assignment of Error No. 1
By this assignment, defendant Ruiz complains of his sentence of two and one-half years at hard labor, and defendant Sweeney complains of his sentence of one and one-half years at hard laborthe maximum possible imprisonment for each defendant being ten years at hard labor. LSA-R.S. 40:966. In sentencing Ruiz, the trial judge noted that the 29-year old defendant was married, had a five-year old daughter, and had served three and one-half years in the United States Marine Corps before being discharged for medical reasons. He had completed three semesters of college education and was employed as a truck driver, hauling produce. He supported his parents. Furthermore, the judge noted, Ruiz had a fairly steady employment history, and no previous criminal record.
In sentencing Sweeney, the trial judge noted that the defendant was 26 years old, single, had received two years of college education, and had worked in the oil fields for approximately two years. The judge further noted that Sweeney was attempting to re-enroll in college, and was engaged in oil field work when arrested. The judge also noted a shoplifting conviction in 1976.
In passing sentence, the court concluded that the defendants' conduct caused serious harm, that there was no strong provocation therefor, and that a lesser sentence would deprecate the seriousness of the offense. He also noted that the defendants were likely to commit more crime if placed on probation and, therefore, were in need of custodial confinement. The judge was apparently motivated by the quantity of marijuana seized, by the fact that a great deal more had apparently already been distributed, and by the large sum of money involved. The court further noted Sweeney's lesser involvement in the aborted distribution scheme.
Because of the amount of marijuana seized and the amount which had apparently been previously distributed, these sentences are not grossly out of proportion to the severity of the crime; moreover, these sentences constitute a measurable contribution to the goals of deterrence and retribution. State v. Telsee, 425 So.2d 1251 (La. 1983). These sentences compare favorably to others having a similar factual basis. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Jenkins, 419 So.2d 463 (La.1982); State v. McDonald, 414 So.2d 735 (La.1982).
This assignment of error lacks merit.

Bruton Violation Assignment of Error No. 2
The defendant Ruiz complains under this assignment that in this joint trial an oral statement of his co-defendant Sweeneywhich was made to Deputy Toney and implicated Ruizwas admitted contrary to Bruton v. U.S., 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Bruton held that the admission of a statement of a codefendant which implicates the other codefendant, violates the implicated codefendant's right of confrontation, where the codefendant making the statement does not take the stand.
*335 While the United States Supreme Court has not to our knowledge addressed this precise issue, the Federal Courts of Appeal have made it clear that Bruton is inapplicable to bench trials. "The core of Bruton is that the admission of [the confessing defendant's statement] against the confessing defendant is tantamount to its admission against his codefendant because the jury will ignore the limitation in deciding the issue of the nonconfessing defendant's guilt or innocence." Cockrell v. Oberhauser, 413 F.2d 256, 258 (9th Cir.1969). It has thus been held that the Bruton rule does not apply in a bench trial because it is presumed that the judge is capable of applying the rule of limited admissibility and will consider the proffered statement with respect to the confessor's guilt alone. United States ex rel Faulisi v. Pinkney, 611 F.2d 176 (7th Cir.1979); Cockrell, supra.
Therefore, this assignment of error lacks merit.

Notice of Statements Assignments of Error Nos. 6 and 7
The defendants complain hereunder that the notice of inculpatory statements required by LSA-C.Cr.P. Art. 768, was untimely since it was not filed until the day of trial. They contend, furthermore, that the contents of the notice were insufficient. In a bench trial, such as this, the defendant is not entitled to the notice provided by Article 768. State v. Korman, 397 So.2d 1346 (La.1981); State v. Himel, 260 La. 949, 257 So.2d 670 (1972). Not being entitled to such notice in the first instance, defendant may not complain of its timeliness or content. These assignments are without merit.

Feed Bag Chain of Custody Assignment of Error No. 8
The defendants contend under this assignment that State Exhibit 3the animal feed bag found in the van pursuant to a search warrantwas not sufficiently connected to the case for it to have been properly admissible.
This assignment of error is without merit. With respect to demonstrative evidence, the issue is whether it is more probable than not that the evidence offered is the same as that seized. State v. Roussel, 381 So.2d 796 (La.1980). It is not essential to establish a continuous chain of possession if that probability has been established. State v. Sharp, 414 So.2d 752 (La.1982). Deputy Toney positively identified the exhibit in question as the bag seized from the vehicle, and Susan Rutledge of the crime lab identified it as the item she received from Deputy Toney. This objection goes to the weight of the evidence rather than to its admissibility. State v. Krolowitz, 407 So.2d 1175 (La.1981).

The Stop and Surrounding Events Assignments of Error Nos. 9 and 10
Though difficult to understand because of its convoluted phraseology, Assignment No. 9 apparently contends that Ouachita Parish Deputies did not have probable cause to stop defendants' van because the timeliness of the information relied on was not demonstrated, nor was the basis of the informant's knowledge.
Assignment No. 10 complains that the search of Sweeney after the vehicle stop was made prior to arrest, and was unsupported by probable cause.
The vehicle stop herein was made on the authority of Deputy Toney, as a result of information received from Trooper Foy of the Arkansas State Police. The information related by Foy described the vehicle, its driver and the van's direction of travel. Both Foy and Toney testified that the informant was credible because of previous felony arrests that had been based on information provided by him. They further testified that the marijuana had been personally observed by the informant. Moreover, Foy had verified the information provided by the informant by following the van to the Louisiana state line.
It is axiomatic that officers possessing probable cause may stop and search a vehicle if the information known to the officers would have supported a search warrant if presented to a neutral magistrate.
*336 Carroll v. U.S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924). The information obtained from Trooper Foy was explicit and the basis of his knowledge was stated. While the timeliness of the information was not specifically indicated to Toney, sufficient timeliness is implicit in Foy's observation of the vehicle and its appearance in Ouachita Parish shortly thereafter. All of these factors combined, furnished probable cause to stop and search this vehicle under the Carroll doctrine. See State v. Trahan, 425 So.2d 1222 (La.1983); State v. Turner, 337 So.2d 1090 (La.1976). This assignment is without merit.
With respect to the search of the defendant Sweeney, Deputies Telano and Toney testified that Sweeney was arrested and searched subsequent to Toney's arrival. They stated that when Toney arrived, he advised Sweeney of his rights, told him he had cause to believe marijuana was in the vehicle, asked to whom the vehicle belonged, and sought permission to search it. Sweeney's responses were evasive. Toney then arrested and searched him, finding a bag of marijuana, a pipe, and some pills.
Appellant Sweeney vigorously argues that the information available to the officers indicated that only the described Mexican male, Ruiz, would be in the vehicle. Thus, the officers had no information to connect Sweeney to a criminal offense, and they therefore had no probable cause to arrest him.
Sweeney apparently concedes that the information received by Toney clearly tied Ruiz to the vehicle and the marijuana therein, and established probable cause for the search of the vehicle. The same information which tied Ruiz to the vehicle, also provided probable cause to arrest Ruiz. The serious question thus presented is: Did Toney have probable cause to arrest and search Sweeney incidental to the facts known about Ruiz and the van?
We find that probable cause to arrest Sweeney did in fact exist. As the trial judge noted in his per curiam, Sweeney refused to disclose the ownership of the van, after being advised of his constitutional rights and told that he was being stopped on suspicion of having marijuana in the van. Furthermore, as Deputy Telano testified, Sweeney was evasive. These factors, when coupled with the information concerning Ruiz and the van itself, furnished probable cause for the arrest and contemporaneous search of Sweeney.
We note parenthetically, as pointed out in defendant's brief, that Deputy Duncan testified that Deputy Telano discovered the bag of marijuana and other items on Sweeney during a "pat search" prior to the arrival of Toney. The trial judge found to the contrary and so noted in his per curiam. Moreover, Officers Toney and Telano specifically testified that the search occurred after Toney's arrival. Furthermore, Duncan lacked a competent vantage point and unobstructed line of vision from which to observe Sweeney's search, since he was preoccupied with Ruiz during the search of Sweeney. Thus, there is more than an adequate basis for the trial judge to have accepted the version of Telano and Toney. This finding should not be disturbed by us absent a showing of abuse of discretion. State v. Parkerson, 415 So.2d 187 (La.1982).
In any event, under the circumstances of this stopwhich was known by the officers to be based on a drug investigationTelano clearly had the authority to "pat" Sweeney for his own protection. LSA-C.Cr.P. Art. 215.1. The finding, during that search, of a bulge in the defendant's pants pocket consistent with the shape and feel of a bag of marijuanawhen coupled with the information already known to the officers concerning the van and Ruiz also constituted probable cause to arrest and contemporaneously search Sweeney.
These assignments of error lack merit.

Search Warrant Assignments of Error Nos. 11, 12, 13, 15 and 3
In Assignment Nos. 11 through 13, the defendants contend that the affidavit in support of the search warrant did not establish probable cause, and contained false information with respect to statements of the *337 defendants concerning a cigar box retrieved from the van subsequent to the initial stop. Assignment No. 15 complains that the statements of Sweeney contained in the affidavit are the tainted fruits of a previous illegal arrest and search. Assignment No. 3 contends that State's Exhibits 1 through 9 were the fruits of an illegal stop and search and were therefore inadmissible at trial.
The affidavit complained of contains the same information that Deputy Toney testified he received from Trooper Foy, except that it does not recite the fact that Foy had just followed this vehicle to the Louisiana state line. It does state, however, that Foy had "just received" the information. Furthermore, the affidavit recites the results of the search of Sweeney and Ruiz at the scene of the arrest. The affidavit further recites that Toney asked Ruiz about a cigar box located next to the driver's seat which Toney observed from the open doorway of the van. The affidavit avers that Ruiz responded that it was his personal smoking marijuana. It also states that Sweeney advised Toney and Deputy Clark that, of the three animal feed bags containing marijuana originally in the van, there was only one remaining.
Of course, under Carroll, supra, as we have just discussed, probable cause to stop and search the van existed. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), authorizes the towing of a vehicle to the police station when, as here, it is found "in traffic," and it is subsequently searched there within a reasonable period of time. The stop of this vehicle and its subsequent search at the station five and one-half hours later, is therefore supported by the Carroll-Chambers doctrine. Thus, the search warrant was superfluous.
Nevertheless, it is obvious that the affidavit furnished probable cause for the issuance of a search warrant. While the statement in the affidavit that Toney had "just received" the information is conclusory, that information is only pertinent to the initial stop of the vehicle. It was clear, from the information available to Toney, that the observations related to Trooper Foy by the informant were recently made. Thus, irrespective of the conclusory remark, "just received," the affidavit itself indicates that it was based on information recently received from an Arkansas trooper, that a vehicle was stopped, and that marijuana was found on the person of one of the occupants and in a cigar box next to the other. The affidavit further states that a large quantity of cash was discovered on one of the defendants, and that one of the occupants stated that there was a large bag of marijuana remaining in the vehicle. All of these factors, when cumulatively considered, furnished probable cause for the issuance of the search warrant.
Assignment No. 11 therefore lacks merit.
Assignment Nos. 12 and 13, which assert that the affidavit contained erroneous statements, are without merit.
Assignment No. 12 complains that Ruiz testified at the motion to suppress that he did not, in fact, tell Toney what was in the cigar box. Assignment No. 12 further contends that Sweeney also testified that he never made any statements to Toney or Clark concerning the animal feed bag containing marijuana. These statements were directly contradicted by the officers and, in fact, Sweeney conceded that shortly after his arrest he requested an opportunity to speak with Deputy Clark. As the trial judge noted in his per curiam, the defendants failed to carry their burden of proof under this assignment. We agree. The defendants did not demonstrate that the trial court abused its discretion in accepting, as credible, the officers' version of the facts. We therefore do not disturb that finding. State v. Parkerson, 415 So.2d 187 (La.1982).
In Assignment No. 13, the defendants contend that the affidavit states that the cigar box was still in the van at the time the warrant was requested, when in fact it had been removed. The affidavit does not state whether the box was in the van at the time the affidavit was sought. It only states that Ruiz, when asked about it, commented that it contained marijuana *338 for his own use. Assignment No. 13 is therefore without basis.
Assignment No. 15 complains that the statements of Sweeney recited in the affidavit for the search warrant, were the fruits of an illegal arrest and search. This contention is without merit for the reasons we previously expressed in finding the stop, arrest and search to be proper. Assignment No. 3, which complains that the trial court admitted State's evidence which was the fruit of an allegedly illegal stop and arrest and a tainted search warrant, is likewise without merit for the reasons previously expressed.
Thus, most of the assignments treated in this section of the opinion are predicated upon assertions which have been disposed of adversely to the defendants elsewhere in this opinion. All five assignments are without merit.

Leading Questions Assignments of Error Nos. 17 and 18
By these two assignments of error, the defendants contest the trial court's failure to sustain objections to leading questions propounded by the State to Deputy Toney and Trooper Foy at the hearing on the Motion to Suppress.
The defense objected when the State asked Foy if the informant had told Foy whether he had made a personal observation of the substance in the van. The State then rephrased the question without eliminating its "leading" or suggestive nature, and the defense urged a second objection which was again sustained. The State attempted to rephrase the question, but it was presented in essentially the same form a third time. On this occasion, the defense objection thereto was overruled.
The State also asked Toney if he had been told by Trooper Foy whether the informant said he had observed the marijuana. The defense's objection to this question was sustained. The State then propounded the same question with slightly different wording but without eliminating its leading nature. After another defense objection, the State volunteered to restate the question, and did so, by asking Toney what Foy related that the informant said. There was no objection to this question.
The law on the issue of leading questions is well set out in State v. Prestridge, 399 So.2d 564 (La.1981):
"A leading question is one which suggests to the witness the answer he is to deliver; ordinarily, such questions are prohibited when posed to one's own witness unless the witness is hostile or unwilling. La. R.S. 15:277. The purpose of the rule is to guard against the danger that a witness will acquiesce to a false suggestion. State v. Carthan, 377 So.2d 308 (La.1979). Notwithstanding the general rule, a verdict should be disturbed on appeal only where there is a clear abuse by counsel, calculated to prejudice the rights of the accused. State v. Quincy, 363 So.2d 647 (La.1978). In any event, the matter is largely within the discretion of the trial judge; absent a palpable abuse of his discretion, a finding of reversible error is unwarranted. State v. Fallon, 290 So.2d 273 (La.1974)."
With respect to the question propounded to Toney, it was finally restated in a form which, though probably leading, was not objected to. While it can be persuasively asserted that the question to Trooper Foy was leading, we find no palpable abuse of discretion requiring the finding of a reversible error. Quincy, supra; Fallon, supra.
These assignments of error are without merit.

Statements of Defendants Stemming from Stop and Search Assignments of Error Nos. 14, 19 and 4
These assignments are all without merit as they contend, in one fashion or another, that the statements of Ruiz and Sweeney resulted from a tainted stop, an illegal arrest, or an improper search warrant. The stop, the arrest and the warrant have all been previously found valid by us, and these assignments are without merit for the reasons previously expressed.
*339 Assignment No. 14 does additionally contend that defendants' statements were coerced. The trial court stated in its per curiam that the State bore its burden of proof, under LSA-C.Cr.P. Art. 703, in establishing that the statements sought to be excluded were voluntary and thus admissible. This finding is amply supported by the record and will not be disturbed unless unsupported by the evidence. State v. Castillo, 389 So.2d 1307 (La.1980); State v. Fisher, 380 So.2d 1340 (La.1980); State v. Matthews, 354 So.2d 552 (La.1978).
The convictions and sentences of the defendants are therefore affirmed.
AFFIRMED.